[S. F. No. 10299. In Bank.—September 21, 1923.]

LIVE OAK WATER USERS' ASSOCIATION et al., Petitioners, v. THE RAILROAD COMMISSION OF THE STATE OF CALIFORNIA, Respondents.

[1] WATERS AND WATER RIGHTS — PUBLIC UTILITIES — CONTRACTS — FIXING RATES — POWER OF RAILROAD COMMISSION. — Where consumers of water furnished by a public utility are divided into two classes, one class being land owners who hold contracts with the public utility, which constitute a burden or servitude upon the waters of the public utility, and provide that the water rights contracted for are to be appurtenant to each parcel of land and may not be sold except with the land, that all the covenants and conditions of the contracts shall run with the land and that the rate per acre shall be computed upon the entire acreage of the

tract to which the water right or appurtenant, whether or not the land, is all irrigated or susceptible of irrigation, and the other class of consumers consists of persons who hold no contracts but merely purchase water from the public utility, the Railroad Commission has jurisdiction to increase the rates to be charged, both as to contract holders and noncontract holders, and to apply the rates to the full acreage covered by the contracts whether or not it is irrigated, but making the rate less to contract holders than to noncontract holders.

[2] RAILROAD COMMISSION — JURISDICTION — REVIEW OF DECISIONS — FINDINGS OF FACT.—The power of the supreme court to review the orders and decisions of the Railroad Commission are expressly limited by constitutional provision and the review cannot extend further than to determine whether the commission has regularly pursued its authority, including a determination of whether the order or decision under review violates any right of the petitioner under the constitution of the United States or the state of California, and the findings and conclusions of the commission on questions of fact, including reasonableness, discrimination, and classification, are final and not subject to review.

[3] ID.—DISCRIMINATION IN RATES—WHEN PERMISSIBLE.—Not every discrimination or recognition of a ground of difference in rates to be charged water users by a public utility may be classified as unlawful; a discrimination based upon reason and justice can properly exist.

APPLICATION for a Writ of Certiorari to review an order of the Railroad Commission regulating water rates. Order affirmed.

The facts are stated in the opinion of the court.

F. S. Brittain and T. C. Nelson for Petitioners.

Hugh Gordon, William W. Clary and Carl I. Wheat for Railroad Commission.

Isaac Frohman, Devlin & Brookman and Henry Ingram for Respondent Sutter-Butte Canal Co.

2. Right to appeal from decision of Railroad Commission, note, 49 L. R. A. (N. S.) 565.

3. Right of water or light company to discriminate between consumers as to rate, notes, 20 Ann. Cas. 952; Ann. Cas. 1914B, 26; 61 L. R. A. 113; 27 L. R. A. (N. S.) 674; L. R. A. 1915D, 1086.

SEAWELL, J.—This court had occasion once before to outline the facts of the instant case, and for the purposes of the present consideration it adopts its former statement of facts with some modifications.

By this proceeding petitioners seek to have reviewed and annulled a certain order and decision of the Railroad Commission, given and made on April 26, 1922, with relation to the water rates of the Sutter-Butte Canal Company, in so far as the said order and decision of the Commission affects and undertakes to regulate certain water rates payable by petitioners as customers of the Canal Company in alleged violation of law. The individual petitioners herein, and also those persons who constitute the membership of the several associations who are named as petitioners herein and for whom merely an oral appearance was entered and who introduced no evidence before the Commission with the exception of two, are land owners in the region supplied with water for irrigation purposes by the Canal Company, and as such land owners are either directly, or through their predecessors in interest, the holders of contracts with such Canal Company or its predecessors, for the furnishing of water upon their respective parcels of land. No complaint is made as to the rates fixed by the order nor is the necessity of an increase in rates questioned. [1] The sole question is whether or not these rates should be applied to the full acreage covered by the contracts or only to the acreage actually irrigated, assuming the contract holder does not desire to irrigate all the land covered by his contract. These contracts in at least six different forms were entered into at various times by the parties thereto prior to the year 1913. They differ somewhat as to the charge per acre for water and also in some instances as to the amount of the initial charge required by the water company at the time of making said contracts; but in other respects they are substantially the same and constitute a burden or servitude upon the waters of the Canal Company. (*Southern Pac. Co.* v. *Spring Valley Water Co.*, 173 Cal. 291, 296 [L. R. A. 1917E, 680, 159 Pac. 865]; *Palermo L. & W. Co.* v. *Railroad Com.*, 173 Cal. 380, 385 [160 Pac. 228]; *Allen* v. *Railroad Com.*, 179 Cal. 68 [8 A. L. R.

249, 175 Pac. 466].) The water rights contracted for were to be appurtenant to each parcel of land and might not be sold except with the land. Said contracts provided further that all the covenants and conditions therein contained should run with the land. The contractual rate per acre was to be computed upon the entire acreage of the individual tract to which the water right was made appurtenant, whether or not the land was all irrigated or susceptible of irrigation. The consumer was to construct lateral ditches for delivery and the water company was given rights of way over the consumer's land and was also given a lien upon the consumer's entire tract of land for defaulted payments for water. The contract parties operated under these contracts without disagreement for several years, during which period the water company largely extended its irrigation system so as to include among its consumers many persons who were not contract holders, but were merely consumers of water furnished by the water company in its capacity as a public utility. That the Sutter-Butte Canal Company was from its inception a public utility, supplying water for irrigation uses, must be and is conceded by the petitioners (*Butte County Water Users' Assn.* v. *Railroad 'Com.,* 185 Cal. 218 [196 Pac. 265]; *King et al.* v. *Railroad Com.,* 190 Cal. 321 [212 Pac. 200]). This much may be regarded as an established fact and condition so far as the instant proceeding is concerned. In the year 1917 the Railroad Commission, upon application of the Canal Company, undertook to investigate, establish, and fix general water rates for said Canal Company affecting all of the consumers of its water for irrigation, whether contract or noncontract users of said water. All of the parties hereto were parties to that proceeding. The Commission, by its order therein, made on the twenty-fifth day of March, 1918, fixed rates per acre for water affecting all such consumers, and in its decision so doing provided that the water served thereunder might be charged for at the acreage rate or might be measured by meter and charged for that way. With that portion of the order which deals with meterage rates we are not concerned, but with that portion of the order which dealt with acreage rates by which the Commission divided the con-

sumers of the Canal Company into two classes, those who held contracts and those who did not. The annual rate for contract holders was made somewhat lower than that for noncontract holders. The reason for this differentiation was explained by the Commission in its order as being that, since a large portion of the contract holders had paid initial charges in varying amounts per acre. it would seem unfair that new consumers who had not made a similar advance should receive service at the same cost as those who had made such payments. With respect to the provision in the contracts that the holders thereof should pay water rates according to the acreage of each individual tract, whether the same was irrigated or not, the Commission made no order or ruling which would have the effect of superseding or abrogating said contracts in that respect. The effect of the order of the Railroad Commission was that the increased rate established by it was as to contract holders less per acre than the rate fixed for noncontract customers. The contract holders were required, however, to pay such lower rate upon the basis of the entire acreage of their respective holdings while the noncontract · customers were to pay the higher rate upon the total acreage designated in the application of the consumer. The foregoing order of the Commission went into effect shortly after the date of its entry and its rates were thereafter charged and collected by the water company as to all of its customers during the succeeding three years or over, and to the time when the subsequent order of the Commission, now under review, was made and put into effect. None of the contract water users of the Canal Company during that period took any proceedings looking to a review or annulment of said order, or otherwise attempted in any form to assert that any rights under the provisions of their contracts had been invaded by the Commission in making said order, with the exception that certain of these contract customers, upon the putting into effect of said order, protested against the Canal Company's interpretation of the same and offered to pay the company at the rate set forth in its said order as affecting them, for each year, according to the number of acres upon which each of said contract customers desired to use water for irrigation

during that year, but the company at all times refused
to accept said offer and demanded and received payment
of the rates so established upon the entire acreage of each
of said contract holders, who thereupon submitted to and
paid said water rates according to the acreage of their
respective tracts of land as provided in their said con-
tract without further objection. On November 5, 1921,
the Sutter-Butte Canal Company filed another application
with the Railroad Commission asking for a general increase
in its water rates. The Commission on April 26, 1922,
after an exhaustive hearing and investigation, gave its
decision and entered its order authorizing a further in-'
crease in rates for water service by said Canal Company
which affected all its consumers. In its consideration the
Commission took express cognizance of the contention of
these contract water users that its previous order, as in-
terpreted by the Canal company, did, and that its present
order would, operate to work a discrimination between
contract and noncontract users by compelling the former
to pay an increased acreage rate on the entire acreage
of their respective tracts of lands covered by said contracts,
whether the whole or any portion thereof was irrigated
or not. In dealing with said contention the Railroad Com-
mission expressly held that the interpretation placed by
the Canal Company upon its said former order was cor-
rect and in substance held that with the exception of its
admitted power over the regulation of the water rates of
said public utility, it had no power to abrogate or inter-
fere with the obligations of said contracts. It accord-
ingly, by its decision and order, made a general increase
in the water rates of the Canal Company, substantially
in the form of its previous order, but with the express
ruling that as to the acreage of contract holders to be
affected by such increase the provisions of their contracts
should remain in full force and effect. The petitioners
herein filed an application for rehearing before the Com-
mission, which was denied, whereupon they instituted
the present proceeding to annul said last-named order in
the respect above indicated. The reply which the re-
spondents made to petitioners' application brings before
us the proceedings had before the Commission upon both

hearings, as well as the record in the proceeding which resulted in making the order of April 26, 1918.

The petitioners do not contend that the Sutter-Butte Canal Company and its predecessors through whom they claim to have received their water right contracts had not taken on the character of a public utility from a period antedating their said contracts, nor do they deny that their contract rights thereunder were not at all times subject to control and regulation as to rates by the state under article I, section 16, of the state constitution.

The Railroad Commission did not attempt to change, limit, modify, or abrogate any of the provisions of said contracts. A decision on the question of liens, as well as other questions of a purely legal character, was reserved by the Railroad Commission for adjudication by the courts. (*Law* v. *Railroad Com.,* 184 Cal. 737 [14 A. L. R. 249, 195 Pac. 423].) Acting within its unquestionable jurisdiction it did increase the water charges by the adoption of a uniform rate scale which was made applicable to each and every acre owned by the contract holders. Its action in this particular was in strict accord with the system which was agreed upon by the petitioners. The Railroad Commission could not have acted in any other way and kept within its jurisdiction. By what authority it could have done differently than it did, so far as total acreage of each individual contract holder was concerned, has not and cannot, we think, be shown. Petitioners impliedly, if not expressly, admit that if the contract holders had exercised their full rights and irrigated each acre of their lands without exception the objection based on unlawful discrimination would be removed. If, indeed, the number of acres which a consumer should choose to irrigate rather than the number upon which he contracted to pay a water rate is the criterion by which unlawful discrimination is to be determined, then the failure or refusal of a non-contract holder to irrigate in any one year a single acre included in the total acreage designated in his annual application would bring about the very result petitioners complain of. By such a rule one would be excused from performing what he agrees to do and may do that which it pleases him to do, a basis too shifting to predicate unlawful discrimination upon.

[2] The power of this court to review the orders and decisions of the Railroad Commission are expressly limited

by constitutional provision.  Section 23 of article XII of the constitution provides: "Every private corporation, and every individual or association of individuals, owning, operating, managing or controlling any . . . canal, pipe-line, plant or equipment, or any part of such . . . canal, pipe-line, plant or equipment within this state, . . . for the production, generation, transmission, delivery or furnishing of heat, light, water or power . . . either directly or indirectly, to or for the public . . . is hereby declared to be a public utility subject to such control and regulation by the Railroad Commission as may be provided by the legislature, and every class of private corporations, individuals, or associations of individuals hereafter declared by the legislature to be public utilities shall likewise be subject to such control and regulation.  The Railroad Commission shall have and exercise such power and jurisdiction to supervise and regulate public utilities, in the State of California, and to fix the rates to be charged for commodities furnished, or services rendered by public utilities as shall be conferred upon it by the legislature, and the right of the legislature to confer powers upon the Railroad Commission respecting public utilities is hereby *declared to be plenary and to be unlimited by any provision of the Constitution. . . . "*  (Italics ours.)

Deriving its authority from the above constitutional source the legislature has provided, by section 67 of the Public Utilities Act, the limit of this court's jurisdiction and power as a reviewing body by the following provision: " . . . The review shall not be extended further than to determine whether the commission has regularly pursued its authority, including a determination of whether the order or decision under review violates any right of the petitioner under the constitution of the United States or of the State of California.  *The findings and conclusions of the commission on questions of fact shall be final and shall not be subject to review;* such questions of fact shall include ultimate facts and the findings and conclusions of the commission on *reasonableness* and *discrimination.*  The commission and each party to the action or proceeding before the commission shall have the right to appear in the review proceeding.  Upon the hearing the supreme court shall enter judgment either affirming or setting aside the order or decision of the commission. . . . "  (Italics ours.)

By section 17 (b) of said act it is again provided: ''Except as in this section provided, no public utility shall charge, demand, collect or receive a greater or less or different compensation for any product or commodity furnished . . . or for any service rendered . . . than the rates, tolls, rentals and charges applicable to such product or commodity or service as specified in its schedules on file and in effect at the time . . . nor shall any such public utility refund or remit, directly or indirectly, in any manner or by any device, any portion of the rates, tolls, rentals and charges so specified, nor extend to any corporation or person any form of contract or agreement or any rule or regulation or any facility or privilege except such as are regularly and uniformly extended to all corporations and persons; provided, that the commission may by rule or order establish such exceptions from the operation of this prohibition as it may consider just and reasonable as to each public utility.''

The above cited article of the constitution and sections of the Public Utilities Act are conclusive upon the question that the Railroad Commission's decision and order in the instant case on the question of discrimination and classification is not subject to annulment by this court. But if we were vested with jurisdiction to correct or annul the decision it is by no means certain that we would do so upon the record presented and the showing made. That there is a logical and natural ground for the classification made by the Railroad Commission seems convincing. A great many of the contract consumers had, in various ways from the beginning of the utility's existence, aided financially and otherwise in the construction and maintenance of the irrigation system by liberal loans of money, advancements, donations of rights of way, and by making initial payments aggregating large amounts for water rights as shown by the record in the instant case, as well as in former and other proceedings had before this court in which the affairs of this identical Canal Company were involved. It is true that any sums which became due for water service became a lien upon the lands and might be foreclosed as such, but this provision was a part of a contract freely entered into. In addition to the advantages here pointed out the contract holder's right to water was appurtenant to and ran with the land and continued as long as the corporate existence of the Canal Company lasted.

It is the claim of petitioners that under certain decisions of this court, notably *Leavitt* v. *Lassen Irr. Co.*, 157 Cal. 82 [29 L. R. A. (N. S.) 213, 106 Pac. 404] ; *Limoneira* v. *Railroad Com.*, 174 Cal. 232 [162 Pac. 1033], and *Butte County Water Users' Assn.* v. *Railroad Com.*, 185 Cal. 218 [196 Pac. 265], contracts such as the one under consideration (and in the latter case the identical contracts) give neither party any right which is not subject to the power of the state, as the latter has unquestionable power to regulate and control public uses irrespective of the contractual relations of private parties.   This knowledge was imputable to petitioners before they entered into their contracts.   But whatever may be said for or against the contention that the contracts impressed upon the waters of the Canal Company were but mere naked easements which are noneffective and could offer no resistance to the state's right to control and prorate said waters under the rule declared in *Butte County Water Users' Assn.* v. *Railroad Com., supra,* the answer is that the owners of said easements enjoyed the right to be supplied with one cubic foot per second of water for each 160 acres of land unless by reason of a scarcity of the water supply, as pointed out in the last cited case, new consumers would suffer material loss if denied the privilege of sharing with the old consumers in an equal distribution of the entire water supply. The point we seek to make is that said water contracts are a thing of value and were of sufficient importance to receive the attention and consideration of the Commission in making the classification which it did make even though said contracts must yield to the exigencies of great public necessity, as was fully considered in the last cited case.   It was there said: "A water company supplying water for irrigation has not the power to take on new consumers without limit.   Its power to supply water is, of course, limited to the amount of its supply and when the demands of consumers upon it have reached this limit, it has no right to take on new consumers to the necessary injury of those it has."   The value to the contractor of the right to have water appurtenant to his land is discussed by the decision in *Palermo L. & W. Co.* v. *Railroad Com., supra,* and in other cases cited.

The Commission further found from the record before it that a compliance with petitioners' request to relieve a large acreage from water-rate payments contrary to their agreements would have reduced the revenues of the Canal Com-

pany to a dangerous if not ruinous point and probably would have seriously crippled, if not defeated, plans for present and future developments that were essential to the welfare of all concerned. Whether or not petitioners used upon their lands the full amount of water which they bound themselves to pay for, it was the duty of the Canal Company, nevertheless, to hold itself in readiness to supply the water when required. Without discussing the legal effect of these two last propositions they were entitled to receive, and did receive, consideration by the Commission in balancing the equities of the parties to this proceeding. The duty of the Canal Company to furnish the water which it agreed to furnish by its contract remains a continuing and enforceable obligation excusable only upon the happening of some such contingency as was pointed out in *Butte County Water Users' Assn.* v. *Railroad Com., supra.*

That the rights conferred upon petitioners by said contracts were regarded by them as being of value is well shown by their unwillingness to concede that said contracts were in anywise annulled or abrogated by the Commission's action.

In making the classification for the purpose of rate-fixing the Commission gave consideration to a number of important factors or elements which distinguished one class from the other. The contract holders paid an initial charge which the year-to-year customers were not required to pay and it was the judgment of the Commission that it was unfair that the new customers should receive service at the same cost as those who had made advance payments and were permanent consumers. A vast majority of the new consumers were growers of rice, an industry which had suddenly developed into favor and prominence, but which was in a speculative stage. Rice-growing required in some respects a different kind of service than was required for the production of other crops. They were classed as short-term consumers but, like all of their class, were permitted to enter the class of the contract holders by paying said initial or advance payments. It is clear that the purpose of classification was in the interest of equalizing as far as the situation would permit, the cost of carrying water upon the lands of all of the Canal Company's consumers. Petitioners have shown no violation of the provisions of section 19 of the Public Utilities Act, which provides that no public utility shall make or grant any preference or advantage to any corporation or

person or subject any person or corporation to any prejudice or disadvantage or establish or maintain any unreasonable difference as to rates, charges, service, facilities, or in any other respect as between classes of service. It will be noted that this section provides that the Commission shall have the power to determine any question of fact arising under said section.

We find nothing in the record by way of evidence which shows or tends to show that the classification made by the Commission in dealing with a complex situation was either unfair or unreasonable as to the members of either class of consumers. On the contrary, there is much to show that the entire effort of the Commission was to compose and equalize an inharmonious situation brought about by various causes.

[3] There is no claim made that the rates established by the Railroad Commission were confiscatory or oppressive. No design has been shown on the part of anyone to give any person an unlawful preference or unfair advantage over another or to indulge in an unlawful discrimination in any manner whatsoever. Not every discrimination or recognition of a ground of difference may be classified as unlawful. A discrimination based upon reason and justice can properly exist. The true principle which governs the instant case is correctly stated in *Pennsylvania R. R. Co.* v. *International Coal Mining Co.*, 230 U. S. 184 [Ann. Cas. 1915A, 315, 57 L. Ed. 1446, 33 Sup. Ct. Rep. 893, see, also, Rose's U. S. Notes]. In dealing with the reasonableness of rates and permissible discrimination based upon differences of conditions, it is there said: "Under the statute there are many acts of the carrier which are lawful or unlawful according as they are reasonable or unreasonable, just or unjust. The determination of such issue involves a comparison of rates with service, and calls for an exercise of the discretion of the administrative and rate-regulating body. For the reasonableness of rates, and the permissible discrimination based upon a difference in conditions are not matters of law. So far as the determination depends upon facts, no jurisdiction to pass upon the administrative questions involved has been conferred upon the courts. That power has been vested in a single body, so as to secure uniformity and to prevent the varying and sometimes conflicting results that would flow from the different views of the same facts that might be taken by different tribunals."

The Railroad Commission undoubtedly had jurisdiction to make the order under review. Its classification for the purpose of rate-fixing was a legitimate exercise of its power. As a matter of law it cannot be said that it was arbitrary or unreasonable. But, however this may be, its findings and conclusions on questions of "reasonableness and discrimination" are not subject to review by this court.

The order is affirmed.

Lennon, J., Waste, J., Wilbur, C. J., Kerrigan, J., and Lawlor, J., concurred.

Rehearing denied.

All the Justices concurred.