[Civ. No. 11202. First Appellate District, Division One.—November 6, 1940.]

CITY OF OAKLAND (a Municipal Corporation), Acting Through Its Board of Port Commissioners, Respondent, v. EL DORADO TERMINAL COMPANY (a Corporation), Appellant.

Williamson & Wallace, W. F. Williamson and Richard P. Norton for Appellant.

Robert Brennan, C. W. Dooling, Marshal P. Madison, Pillsbury, Madison & Sutro and E. J. Foulds, as *Amici Curiae,* on Behalf of Appellant.

W. Reginald Jones, Assistant Port Attorney, for Respondent.

WARD, J.—This proceeding in *quo warranto* is to determine the right of defendant El Dorado Terminal Company, a subsidiary of El Dorado Oil Works, to maintain a public wharf on its privately owned submerged lands in Oakland estuary, and to collect tolls from persons availing themselves of the facilities of the wharf, without a franchise from the Board of Port Commissioners of the City of Oakland. The action was tried upon an agreed statement of facts after the defendant's demurrer to the complaint, and the plaintiff's demurrer to the answer, had been overruled. From a judgment in favor of the City of Oakland, defendant prosecutes this appeal.

Many of the legal questions herein are identical and others very similar to those in the case of *City of Oakland* v. *Hogan et al.,* filed this date (*post,* p. 333 [106 Pac. (2d) 987]), which was a suit to determine the authority of defendants therein to operate and maintain a private wharf within said Oakland estuary, upon public tide lands, owned by the State of California, and not involving any payment of tolls. The Hogan case will be referred to herein, and what is there said on such identical or similar points, including argument and citation of authorities, is by reference made applicable here and determinative of those points.

The Board of Port Commissioners of the municipality of the City of Oakland is, under the terms of the city charter, the legislative body empowered to grant or withhold franchises for the operation of wharves, and is, under the provisions of section 811 of the Code of Civil Procedure, the legislative body authorized to bring this suit. (*City of Oakland* v. *Hogan et al., supra.*)

The complaint in the present action alleges that "defendant has exercised and used, and does now exercise and use,

without any lawful warrant, grant or charter the following liberty, privilege, license and franchise, to-wit, the operation of a public utility wharfinger business, including the maintenance of a public wharf and the taking of dockage tolls and other terminal charges thereon and including the performance of accessorial services in connection therewith . . . ''

In the statement of facts upon which the cause was submitted, it was agreed, for the purpose of this particular proceeding, that the wharf and terminal is a substantial structure erected by appellant within the ''Port Area'' for the purpose of docking, and receiving and discharging cargo of ''ocean carriers''; that there had been issued by the defendant and filed with the Railroad Commission of the State of California a wharfinger tariff, amended from time to time, but similar in form and style to tariffs filed by public utility wharfingers operating in the San Francisco Bay; that the tariffs have been open for inspection by the public, including operators of steamship lines, and shippers and consignees of cargo moving to and from ocean-going and other vessels; that services customarily rendered by public utility wharfingers and shipside terminals are rendered to various vessels and persons other than the parent company of defendant; that the charges for such services are substantially the same as observed by public utility wharfingers in the vicinity, and in accordance with charges approved by the Railroad Commission; that such services are rendered in connection with cargo moving in interstate, foreign and intrastate commerce; that the Railroad Commission in an investigation of appellant company found it to be ''engaged, among other things, in the wharfinger business as a public utility''; that appellant is complying with the provisions of the Public Utility Act; that it has paid a license tax, such as is imposed upon all businesses and professions; that it has never applied to the port commission of the City of Oakland for a license, privilege, permit or franchise to maintain a public wharf, but has complied with all other license and regulatory laws. The agreed statement of facts further set forth that it should ''not be construed as an admission by the plaintiff that defendant possesses any franchise to operate or maintain such wharf or facility, nor preclude the contention that the obtaining by defendant of such franchise is necessary.''

The trial court adopted the stipulation of facts as its findings, and judgment was entered that appellant be ''excluded

and ousted from the exercise of the franchise for the *construction* and operation of a public wharf at that certain wharf occupied by defendant on the Estuary of San Antonio, in the City of Oakland, County of Alameda, State of California, and near the foot of Adeline Street in said City, and the taking of tolls thereon and for its use, and from operating a public utility wharfinger business, including the maintenance of a public wharf thereat, and the taking of dockage, wharfage and other terminal charges or tolls thereon and for its use, and including the performance of accessorial services in connection therewith . . . '' (Italics added.)

■ The stipulation of facts supports the findings and judgment relative to the nature of the business carried on by appellant, namely, a public utility wharfinger business. Appellant urges that in principle there is no substantial difference between a public utility wharf and a non-public utility wharf. It is often hard to distinguish between them. If the property involved is held for public use, or is usable by the public generally, with a charge, such as a toll paid for such use, it comes within the classification of a public utility and permission, generally in the form of a franchise from governmental authority, is necessary. ■ The operation of this wharf, and the taking of tolls, as appears from the stipulated facts, brings it within the category of a public utility. (1 Farnham on Waters and Water Rights, sec. 119.) ''While the right to collect tolls for wharfage and dockage is stated by some authorities to be an incident to the ownership of land abutting on a navigable body of water, the better view is that such a right is a franchise which must have its origin in a legislative grant. (1 Dillon on Municipal Corporations, 5th ed., p. 504, and cases cited.) The right to collect wharfage and dockage tolls is a franchise. (*DeWitt* v. *Hays*, 2 Cal. 463, 468 [56 Am. Dec. 352]; *Pacific Coast SS. Co.* v. *Kimball*, 114 Cal. 414, 417 [46 Pac. 275]; Pol. Code, sec. 2906.)'' ''The erection of a wharf, dock or other construction over tide lands by individuals without license is an encroachment upon the sovereignty or the purpresture which belongs to the state as the owner of the soil to which it is affixed.'' (*Oakland* v. *E. K. Wood Lumber Co.*, 211 Cal. 16, 22, 23 [292 Pac. 1076, 80 A. L. R. 379].)

■ It was not necessary, as contended by appellant, to set forth in the complaint facts supporting the allegation of

the operation of a "public utility wharfinger business". In *quo warranto* it is sufficient to plead the ultimate fact in general terms. (*People* v. *Hayden*, 9 Cal. App. (2d) 312 [49 Pac. (2d) 314].) However, the conclusion of the Railroad Commission on questions of fact, including classification, is final. (Const. of California, art. XII, sec. 23; *Live Oak W. U. Assn.* v. *Railroad Commission*, 192 Cal. 132 [219 Pac. 65]; *Goodspeed* v. *Great Western Power Co.*, 33 Cal. App. (2d) 245 [91 Pac. (2d) 623, 92 Pac. (2d) 410].)

 Appellant admits that in conducting a wharf, situated upon lands not entirely owned by the operator, it may well be that as an incident to complete ownership, it is necessary to obtain a franchise to operate the wharf, but contends that the right to so operate and to collect tolls is an incident to the title and possession of submerged lands. It may be conceded that the erection of a strictly private wharf on private lands, a matter not involved herein, does not require a franchise, but a wharf on private lands, with wharfage facilities offered to the public, if it be a public utility, is subject to control and regulation by the Railroad Commission as provided by the legislature. However, section 23, article XII of the Constitution of California specially provides that such regulation shall not affect the right of an incorporated city or town to grant franchises for public utilities in the manner prescribed by law. Whether complete power, other than the fixing of rates, shall vest in the Railroad Commission depends upon an election called by the local authorities to determine whether the city shall retain such powers or surrender them to the Railroad Commission. The electors of the City of Oakland have determined to retain its power of control over wharfingers in conformity with article XII, section 23, providing: " . . . that this section shall not affect the right of any city and county or incorporated city or town, to grant franchises for public utilities upon the terms and conditions and in the manner prescribed by law."

This brings us to a consideration of those terms and conditions. The charter confers jurisdiction upon the port commissioners to grant or withhold franchises. In addition, however, corporations and natural persons are prohibited from constructing wharves or taking tolls in connection therewith until granted such right or privilege by the governing body having authority in that behalf (Civ. Code, secs. 528–531),

and the president and secretary of such wharf corporation must annually, under oath, report to the governing body certain information relative to the wharf, including the cost of construction, money expended for repairs, the amount received for tolls, etc. (Civ. Code, sec. 530.) Section 529 provides for the dissolution of corporations not complying with the requirements. When division 1, part 4, title 6, is read in its entirety, and the above sections applied one to the other, a detailed plan for the procurement of a permit from the authorized governing body to construct a public wharf appears. Likewise a permit must be obtained to collect tolls on a wharf already constructed.

■ Assuming for the moment, as appellant contends, that "construction" of the wharf is not an issue in this case, nevertheless the taking of tolls, a part of the operation of the business of public wharfage, is an issue; and a penalty is provided for the taking of such tolls without authority from the proper governing body. The complaint charges appellant with the "operation of a public utility wharfinger business" since February 23, 1934. The judgment decrees that defendant "be and it is hereby excluded and ousted from the exercise of the franchise for the construction and operation of a public wharf", etc. The variance seems immaterial, but as a safeguard to appellant's rights, and to obviate a possible interpretation of the judgment as an order to remove the wharf already constructed, the trial court is directed to modify the judgment in that respect.

■ Returning to a consideration of the code sections requiring an authorization before constructing or operating a wharf, or collecting tolls in connection therewith, the substantive law, as it appears in sections 528–531 of the Civil Code, should be read in conjunction with Harbors and Navigation Code, sections 4000–4017, which relate to the manner in which such privileges or franchises shall be granted and are recodifications of Political Code, sections 2906–2921. Harbors and Navigation Code, section 4000, provides that upon approval of the Railroad Commission, the board of supervisors of any county may grant authority for the construction of a wharf on any lands bordering on any navigable bay, with the right to collect tolls. The municipal authorities of any lands situate within the limits of an incorporated town or city may grant authority to construct wharves or chutes, with

the additional right to collect tolls, in the same manner as is provided for the supervisors of a county. (Harbors and Navigation Code, secs. 4000, 4016.) If the wharf is not kept in good repair; or if it is unsafe or dangerous, a penalty may be recovered by order of the board which granted the authority. (Harbors and Navigation Code, sec. 4014.) ▮ Section 4017 confers upon a board of supervisors the power to grant to any railroad corporation, authority to construct a wharf on or in front of lands owned by it bordering on any navigable arm of the sea, situated in or bounding the county, with the additional right to take tolls, etc. This section seems to be more liberal than the preceding sections, but even here all territory under the jurisdiction or control of any incorporated city or town is excluded from the operation of its provisions, thus evidencing once more the intention of the legislature to permit municipalities as agencies of the state to control their own harbors as a local affair.

▮ Appellant contends that a public utility may not abandon or cease its operations except with the consent of or at the order of the Railroad Commission. The rule is that a public utility cannot convey "its railroad, street railroad, line, plant, system, or other property necessary or useful in the performance of its duties to the public" without an order from the Railroad Commission. (Stats. 1927, p. 78.) The section refers to property dedicated to public use. (*Crum* v. *Mt. Shasta Power Corp.*, 220 Cal. 295 [30 Pac. (2d) 30].)

▮ The taking of tolls without a permit from or regulation by the duly constituted authorities may not be said to constitute a dedication of wharfing facilities for public use. In this case a right has been usurped; and the wharf is being operated illegally. The provision prohibiting public utilities from conveying rights, property or accessories, presupposes legal title thereto. Why it should be necessary to obtain the approval of the Railroad Commission to cease violating the law is not made plain in appellant's brief. The Railroad Commission holds to the view that it has no jurisdiction to compel the continuance of a wharf upon the expiration of a franchise. In *Application of Pacific Electric R. Co.*, 23 C. R. C. 767, it said "that authority therefor must be obtained from the board of trustees of the city of Redondo Beach". *People* v. *Northwestern Pac. R. Co.*, 20 Cal. App. (2d) 120 [66 Pac. (2d) 697], cited by appellant, is not in point. That

was a "nonuser and abandonment" matter. The court held that a franchise of a public utility within the purview of the Public Utilities Act (Const., art. XII, secs. 22, 23), once fully exercised, and we may add, legally, may not be forfeited for abandonment without the decision of the Railroad Commission determining that the service was inadequate. In that case it was held that the Railroad Commission did not have jurisdiction to cancel a franchise "under any circumstances". The question of nonuser is not involved in this case.

Section 4015 provides: "Authority shall not be granted under this chapter which will interfere with vested rights, or interfere with or infringe grants made by State authority . . . " Appellant derives title to its land through one Carpentier, who was granted certain tide lands and the right to construct wharves and collect wharfage. However, the privilege was limited to thirty-seven years, and has long since expired. Whatever title to the submerged lands vested in Carpentier did not by implication continue a right to construct wharves and take tolls beyond the limited period. (*City of Oakland* v. *Wheeler*, 34 Cal. App. 442 [168 Pac. 23]; *Board of Port Commissioners* v. *Williams*, 9 Cal. (2d) 381 [70 Pac. (2d) 918].) The right of a riparian owner of land abutting on navigable water does not include the title and possession of submerged lands, nor wharfing privileges thereover. In *Oakland* v. *E. K. Wood Lumber Co.*, *supra*, pages 22–23, the court said: "It is recognized that the owner of land riparian to a navigable body of water has no right below the hightide line as against the state, the property in and dominion and sovereignty over the soils 'covered and uncovered by the flow and ebb of the neap or ordinary tides' having been reserved to the states subject to the rights granted to the United States by the Constitution (*Shively* v. *Bowlby*, 152 U. S. 1 [38 L. Ed. 331, 14 Sup. Ct. Rep. 548]), and on the same equality to California (*Weber* v. [*State*] *Harbor Commrs.*, 85 U. S. 57 [21 L. Ed. 798]), which holds the title in trust for the benefit of the people for purposes of navigation and fishing (*Ward* v. *Mulford*, 32 Cal. 365, 372)."

Appellant company contends that, since it is to a large extent engaged in interstate and foreign commerce, it cannot be required to obtain from respondent a franchise or other authority as a condition precedent to operating and main-

taining its wharf. (U. S. Const., art. I, sec. 8, clause 3.) In other words, that one who operates a wharf entirely upon his own premises, and whose business is that of furnishing services to vessels engaged in interstate and foreign commerce is protected by the commerce clause in the federal Constitution. No claim is presented that appellant has received authority, by franchise or otherwise, from any federal, state or municipal government to operate this wharf, or that Congress has seen fit to regulate the subject in any way affecting either appellant or respondent. In *Clyde Mallory Lines* v. *Alabama ex rel. State Docks Com.,* 296 U. S. 261, 267 [56 Sup. Ct. 194, 80 L. Ed. 215], the court said: "State regulations of harbor traffic, although they incidentally affect commerce, interstate or foreign, are of local concern. So long as they do not impede the free flow of commerce and are not made the subject of regulation by Congress they are not forbidden."

 The privilege of operating a wharf is primarily a local matter, and the federal authorities take over its regulation, either directly or indirectly, only when the power exercised by such local government is incompatible or inharmonious with the interests of the federal government as relates to interstate or foreign affairs, particularly with reference to commerce. (*Parkersburg & O. R. Transportation Co.* v. *Parkersburg,* 107 U. S. 691 [2 Sup. Ct. 732, 27 L. Ed. 584] ; *Cooley* v. *Board of Wardens,* 12 How. (53 U. S.) 299 [13 L. Ed. 996] ; *Covington etc. Bridge Co.* v. *Kentucky,* 154 U. S. 204 [14 Sup. Ct. 1087, 38 L. Ed. 962] ; *Detroit Int. Bridge Co.* v. *Corporation Tax Appeal Board,* 294 U. S. 83 [55 Sup. Ct. 332, 77 L. Ed. 777].) No decision has been called to our attention that has gone so far as to hold that local boards or commissions do not have power to regulate the type and the location of wharves upon lands that are solely within local areas and not under some form of federal jurisdiction.

Appellant seeks support by citation of two highway carrier cases (*People* v. *Yahne,* 195 Cal. 683 [235 Pac. 50], and *Meyers* v. *Railroad Commission,* 218 Cal. 316 [23 Pac. (2d) 26]). The facts in the instant case and in the cited cases are not parallel. A facility with a fixed permanent location, such as a wharf, is hardly comparable with one that travels within and without the state. In the Meyers case, wherein Meyers was engaged in the business of transporting goods from

wharves to other points, the Railroad Commission directed him to desist operation as a common carrier until he obtained a certificate of public convenience. The refusal of the commission to issue the certificate was not predicated upon considerations of traffic safety or congestion, but was rather a determination of who should engage in transporting interstate commerce. The operation of the wharf, from whence goods were taken, played no part in the conclusion reached in the majority opinion annulling the order of the commission.

We are not directly concerned here with appellant's business as a common carrier, if such it is, in transporting passengers or merchandise within or without the state, but simply with its maintenance and operation, without governmental authority therefor, of a structure affixed to land within a municipality. The operation of a wharf is a local affair, the control of which inheres in the governmental board or commission authorized to grant or withhold franchises. Such power continues until Congress acts.

Considering this point further, it may be noted that ferries, bridges and wharves have often been treated upon the same legal basis. However, a ferry or a bridge, particularly if it is operated or extends from one state to the shore in a foreign state or land, is not, as a transportation facility, factually in the same category as a wharf, which does not physically touch a sister or foreign state and is used simply as a landing place for passengers or merchandise. Some support for appellant's theory is found, particularly in opinions deciding tax or rate issues in ferry or bridge cases. An illustration in *Sault Ste. Marie* v. *International Transit Co.*, 234 U. S. 333 [34 Sup. Ct. 826, 58 L. Ed. 1337, 52 L. R. A. (N. S.) 574], wherein it was held in effect that a municipality could not require a ferry company, enfranchised by Canadian authority and operating across international waters, to take out a license as a condition to its operation. In that case, the court said (p. 341): ''The fundamental principle involved has been applied by this court in recent decisions in a great variety of circumstances, and it must be taken to be firmly established that one otherwise enjoying full capacity for the purpose cannot be compelled to take out a local license for the mere privilege of carrying on interstate or foreign commerce.'' There, as here, it is the immediate problem that determines the necessity of a license, permit or franchise. The language

quoted from the Sault Ste. Marie case, standing alone, written as it was by Mr. Justice Hughes, would probably be determinative of this case but for another opinion by the same eminent authority handed down the same day, namely, *Port Richmond etc. Ferry* v. *Hudson County,* 234 U. S. 317, where the court said (pp. 330, 331–332) [34 Sup. Ct. 821, 58 L. Ed. 1330]: ''That principle is, as repeatedly declared, that as to those subjects which require a general system or uniformity of regulation the power of Congress is exclusive; that, in other matters, admitting of diversity of treatment according to the special requirements of local conditions, the States may act within their respective jurisdictions until Congress sees fit to act; and that, when Congress does act, the exercise of its authority overrides all conflicting state legislation.'' ''There are a multitude of such ferries throughout the country and, apart from certain rules as to navigation, they have not engaged the attention of Congress. We also put on one side the question of prohibitory or discriminatory requirements, or burdensome exactions imposed by the State, which may be said to interfere with the guaranteed freedom of interstate intercourse or with constitutional rights of property. The present question is simply one of reasonable charges. It is argued that the mere fact that interstate transportation is involved is sufficient to defeat the local regulation of rates because, it is said, that it amounts to a regulation of interstate commerce. But this would not be deemed a sufficient ground for invalidating the local action without considering the nature of the regulation and the special subject to which it relates. Quarantine and pilotage regulations may be said to be quite as direct in their operation, but they are not obnoxious when not in conflict with Federal rules. . . . It thus presents a situation essentially local requiring regulation according to local conditions. . . . The practical advantages of having the matter dealt with by the States are obvious and are illustrated by the practice of one hundred and twenty-five years. And in view of the character of the subject, we find no sound objection to its continuance. If Congress at any time undertakes to regulate such rates, its action will of course control.''

 As noted above, Congress has not attempted to make any regulations with reference to wharves. The operation of a public wharf, even when used in interstate or foreign

commerce, and even on private property, should not be left to the unchecked and uncontrolled action of the owner. The unrestrained berthing, loading and unloading of vessels, under the direction of one owner at one wharf, is not in conformity with the purposes of the legislature in the creation of a port department, which through its commission, appointed to promote commerce for the harbor, should have the exclusive control and management of the port, unhampered by those whose interests might tend to hinder the adequate and comprehensive development of the entire harbor.

The trial court is directed to modify the judgment by striking therefrom the words ''construction and''; in other respects the judgment is affirmed, respondent to recover costs.

Peters, P. J., and Knight, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on December 6, 1940, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on December 23, 1940. Carter, J., voted for a hearing.