## UNITED STATES v. 1010.8 ACRES IN SUSSEX COUNTY, DEL., et al.

### No. 2.

District Court, D. Delaware.

Sept. 5, 1945.

278

John J. Morris, Jr., U. S. Atty., and W. Thomas Knowles, Asst. U. S. Atty., both of Wilmington, Del., and Charles M. Irelan, Atty., Department of Justice, of Washington, D. C., for petitioner.

James M. Tunnell, Jr., and James B. Carey, both of Georgetown, Del., for Sussex Sand Co., Martin C. Black, and Harry Draper.

David S. Keil, of Wilmington, Del., for Cape Henlopen Surf Club.

LEAHY, District Judge.

The United States of America took title to a plot of land by filing a declaration of taking pursuant to 40 U.S.C.A. § 258. It has heretofore been determined that the State of Delaware was the owner in fee, subject to various leasehold interests. See United States v. 1010.8 Acres, etc. 56 F. Supp. 120.

The government filed a motion to dismiss Black and Draper, Sussex Sand Company and Cape Henlopen Surf Club as parties respondent because (1) the court is deprived of jurisdiction since the State of Delaware cannot be sued under the Eleventh Amendment and the claims of the respondents, citizens of Delaware, are, in substance, assertion of rights against the State; and (2) the parties respondent should be dismissed because of the terms of their leases which release the lessor from liability in the event the lessor should be prevented from abiding by the terms of the lease "by decision of a Court of Law or a decree of a Court of Equity."[1] The points are treated in inverse order.

■ The terms of the lease do not bar recovery by the lessees-respondents in the case at bar. This provision looks to liability of the lessor and not to the termination of the lease under any circumstances. The contention of the government is rejected that the clause in question operates as a termination of the lease on the day of taking by the government since the language of the lease is broad enough to cover termination in case of condemnation. If this be so, then, under such cases as In the Matter of Mayor of New York, 168 N.Y. 254, 61 N.E. 249, and In re Third Street Improvement in City of St. Paul, 178 Minn. 552, 228 N.W. 162, the leases are terminated upon the filing of the declaration of taking or the condemnation and the lessees would have no compensable interest. The cases cited by the government to support its point involved leases with provisions that the tenure shall terminate in the event of condemnation. It is clear that such a specific provision deprives the tenant of any rights in the eminent domain proceedings. See Annotation, 98 A.L.R. 254. But, this authority only operates where the provision in the lease so specifies. Here, there is neither the express provision for seizure or condemnation nor for termination on the happening of stated contingencies. On the contrary, it is merely provided that the Town Commissioners of Lewes (the lessors) shall be absolved and released from liability (i.e., cannot be sued), as distinguished from termination of the lease, in the event that some court decides they—the Commissioners—could not carry out

---

[1] In the lease between Black and Draper and the Commissioners of Lewes dated May 20, 1940, paragraph 5 contains the following clause:

"5. Party of the second part hereby agrees to absolve and release party of the first part from all liability whatsoever under this lease in the event that it, the said party of the first part, should be prevented from abiding by any or all of the conditions herein contained, including the actual leasing of the premises herein demised, by a decision of the Court of Law or a decree of a Court of Equity."

As similar provisions are found in all the leases, the Black and Draper lease merely will be discussed.

the lease. Condemnation by the government[2] is in no sense "an adverse court decision" Town Commissioners vis-a-vis the lessees. The background against which the leases were drawn indicates that seizure or condemnation were not within the contemplation of the parties. See 56 F. Supp. 120 for the substantial doubt which existed over the legal right of the Commissioners to enter into any leases. Up to the time of the execution of the leases no court decision had ever decided the question. Obviously, the provision was inserted for the benefit of the individual Commissioners to guard against liability in the event of a court decision invalidating the leases. There is nothing inherent in this situation to relieve the government from compensating the holder of a leasehold.

Of necessity, the government must conclude, as it does, that in the ordinary case a leasehold interest in condemned property is part of what is taken and the lessee is a necessary party to the condemnation suit. But, the government claims, the owner of the fee, here, is the Sovereign State of Delaware, and the joinder of the lessees contravenes the rule of the Eleventh Amendment that a citizen cannot sue a State. The point is, however, the lessees are not claiming against the State of Delaware. The damage to each lessee by the deprivation of its right to enjoy its lease was caused by the government—not by the State. Their claim is against the government, Trustees of Internal Improvement Fund of Florida v. Southwest Tampa Storm Sewer Drainage District, 5 Cir., 142 F.2d 637, certiorari denied 323 U.S. 732, 65 S.Ct. 69; and the compensation which is sought for the destruction of the leasehold interests cannot be said to constitute, in effect, a suit by a citizen against a State. Although not conclusive, it is interesting to note that the State of Delaware does not claim that insofar as the leaseholders seek compensation from the government that this is a suit against Delaware. Delaware, in fact, has interposed no objection to these proceedings.

The government's motion is denied.

[2] Quaere whether the government does not have mere legal title and does not possess government powers over the property taken. Article 1, Section VIII, Clause 17 of the Constitution provides:

"To exercise exclusive Legislation in all Cases whatsoever, over such District * * *, and to exercise like Authority over all Places purchased by the consent of the Legislature of the State in which the Same shall be, for the Erection of Forts, Magazines, Arsenals, Dock Yards, and other needful Buildings; * * *."

There is nothing to indicate that the government ever got the consent of the Delaware Legislature.