Argued June 26, affirmed July 29, 1924.

## E. W. CAPEN v. CITY OF PORTLAND.

(228 Pac. 105.)

**Municipal Corporations—Golf Links Held "Public Utility" Within Charter.**

Golf links are "public utility," which City of Portland, under its charter, Sections 151–153, may purchase, to furnish means of public recreation, through issuance of bonds payable from proceeds of fees collected from players.

See 28 Cyc., p. 938.

From Multnomah: GEORGE TAZWELL, Judge.

In Banc.

This is a suit brought by the plaintiff to restrain the City of Portland from issuing public utility bonds for the purchase of ground for a public golf links in that city. It is alleged that the city operates a public golf links, known as the Eastmoreland Golf Links, and that the south nine holes of said golf links, on which is situated the club house, are actually owned by the city, and the north nine holes are owned by the Ladd Estate Company and operated by the city under a lease; that on the twenty-eighth day of May, 1924, the city council enacted a pretended ordinance wherein and whereby it was found and declared that the aforesaid golf links was a public utility under the city charter, and provided for the purchase of the north nine holes of said golf course from the Ladd Estate Company and for the payment therefor by the city of $95,000 in so-called "public utility certificates," or with the proceeds of the sale thereof, secured by a trust deed on the property purchased. Annexed to the complaint, and made a part of it, are certain sections of the city charter and certain ordinances of the City of Portland. Section 151 of the charter of the City of Portland reads:

"The city of Portland shall have the power to construct, condemn, purchase, add to, acquire, maintain, operate and own all or any part of any public utility or any plant or enterprise, for the purpose of serving the city and the people thereof for uses public and private. Such power may be exercised in any lawful manner and shall include the power to purchase, condemn or otherwise acquire any franchise heretofore granted to operate a public utility."

Section 152 reads as follows:

"The city shall have the power to construct and acquire in any legal way and to maintain and operate works, plants and facilities for the purpose of doing any and all municipal work by direct employment of labor under the supervision of the city, and may use such works, plants and facilities, and the product thereof, for the purpose of doing municipal work of all kinds, and shall have the power to sell such product for use in the construction of municipal improvements of all kinds. It shall have power to provide payment for the whole or any part of local improvements constructed or done by the city directly under the provisions of this section by assessment against the property benefited thereby. * * "

Section 153 is as follows:

"The term 'public utility' as used in this charter shall be deemed to include every plant, property or system engaged in the public service within the city or operated as a public utility as such terms are commonly understood."

The question here is upon the authority of the city to purchase the golf course and pay for it in public utility certificates, it being claimed by the plaintiff that a golf links is not a public utility within the meaning of the law. There was a demurrer to the complaint, which was sustained, and plaintiff appeals to this court.                    AFFIRMED.

For appellant there was a brief over the name of *Messrs. Teal, Winfree, Johnson & McCulloch,* with an oral argument by *Mr. W. A. Johnson.*

For respondent there was a brief and oral argument by *Mr. Frank S. Grant,* City Attorney.

McBRIDE, C. J.—No question is raised here as to the authority of the city to make this purchase under its authority to provide parks, the sole question being whether a golf links is of such public importance as to constitute a public utility within the meaning of the law.

We find in the text-books no exact definition of a public utility; in fact, it would be very difficult to construct a definition that would fit every conceivable case. It has been frequently held that the words "public utility" are synonymous with "public use." 6 Words & Phrases, 5830; *Valley City Salt Co.* v. *Brown,* 7 W. Va. 191; *State ex rel.* v. *Barnes et al.,* 22 Okl. 191 (97 Pac. 997); *Barnes* v. *Hill,* 23 Okl. 207 (99 Pac. 927); *City of Ardmore et al.* v. *State ex rel. Best,* 24 Okl. 862 (104 Pac. 913). In 19 R. C. L., page 721, defining the powers of municipal corporations, the following language is used:

"Municipal corporations are not limited to providing for the material necessities of their citizens. Under legislative authority, they may minister to their comfort, health, pleasure, or education. They are not limited to policing the city, to paving the streets, to providing it with light, water, sewers, docks, and markets. The power of cities and towns to maintain institutions which educate and instruct as well as please and amuse their inhabitants, such as libraries and botanical and zoological gardens, is unquestioned. So also the public funds may be expended in providing an exhibit at a fair or exposition. The reasonable use of public money for memorial halls, monuments, statues, gates or arch-ways, celebrations, the publication of town histories, parks, roads leading to points of fine natural scenery, decorations upon public buildings, or other public ornaments or embellishments, designed merely to promote the general welfare, either by providing for fresh air or recreation,

or by educating the public taste, or by inspiring sentiments of patriotism, or of respect for the memory of worthy individuals, has received such general sanction that there can be no doubt that muncipal corporations may be constitutionally authorized to expend money raised by taxation for such purposes. The trend of authority, in more recent years, has been in the direction of permitting municipalities a wider range in undertaking to promote the public welfare or enjoyment. Thus, the appropriation of money for public concerts has been held to be proper. So, too, the erection of an auditorium has been regarded as properly falling within the purposes for which a municipal corporation may provide. Generally speaking, anything calculated to promote the education, the recreation or the pleasure of the public is to be included within the legitimate domain of public purposes, and on this ground it has even been held that authority to erect and conduct an opera house may be conferred upon a municipal corporation." [Section 29.]

It has been held that sewers, parks, street railway systems, fuel yards, auditoriums, and cemeteries are public utilities, and, following the general trend of later authorities, we are of the opinion that a golf links, while it is a comparatively new form of recreation here, comes within the reasoning of the decisions in the matters above referred to. The intention in the present case is to furnish a means of recreation for the public for which the city is in nowise liable, as it is provided in the contract that the bonds to be issued pursuant thereto shall be paid from the proceeds of fees to be collected from golf players and from no other fund. The same condition is prescribed in the form of bond which is stipulated in the contract.

Indeed, it may well be doubted whether the plaintiff in this case has any standing to bring this suit. He shows that he is a taxpayer, but by the same com-

plaint he shows affirmatively that as a taxpayer he will not, under the contract with the Ladd Estate Company, be compelled to participate as a taxpayer in the purchase of this property, but that only participants in the game of golf will be taxed, by way of fees, to pay the bonds. In view of the decision of the court in *Sherman* v. *Bellows,* 24 Or. 553 (94 Pac. 549), in the absence of any allegation showing that plaintiff will be injured in any way by the issue of the bonds in question, his right to bring this suit may well be questioned. But that proposition is immaterial to the decision of this case.

The decree of the Circuit Court is affirmed.

AFFIRMED.

McCOURT, J., dissents.