## UNITED STATES v. 16,572 ACRES OF LAND, MORE OR LESS, et al.

### C. A. No. 55.

District Court, S. D. Texas, Galveston Division.

Jan. 9, 1942.

Eugene J. Wilson, Sp. Asst to Atty. Gen., Luther E. Jones, Jr., Sp. Atty., Department of Justice, of Corpus Christi, Tex.; Willett Wilson, Sp. Atty., Department of Justice, of Corpus Christi, Tex.; and Philip Nichols, Jr., Atty., Department of Justice, of Washington, D.C., for petitioner.

Arthur Harris, and Harris & Harris, all of Bay City, Tex., and John H. Crooker, and Thad T. Hutcheson (of Fulbright, Crooker, Freeman & Bates), all of Houston, Tex., for movants.

ALLRED, District Judge, and KENNERLY, District Judge.

This is a proceeding by the United States Government to acquire for the public use and the National Defense, under Section 258 et seq., Title 40 U.S.C.A., the hereinafter mentioned land in this District, and this is a hearing on motions filed herein by the Government and by certain of the landowners, seeking to eliminate from and take out of the proceeding, the oil, gas and other minerals on, in and under such lands.

The facts developed at the hearing of the motions are substantially as follows:

On November 8, 1940, the United States Government filed this proceeding to acquire under Section 258a et seq., Title 40, U.S. C.A., for the National Defense, the fee-simple title to approximately 35,000 acres of land in this District and in the Galveston and Victoria Divisions. Under a Declaration of Taking, dated November 1, 1940, made by the Secretary of War in accordance with Section 258a et seq., and upon the deposit by the Government in the Registry of the court of the sum of money fixed by the Secretary of War as the value of such lands, the court on November 8, 1940, entered an order declaring that the fee-simple title to such lands had vested in the government, and directing that a copy of such order be served on any person in possession or posted on the land. On November 12, 1940, another order was entered, reciting compliance with the first order and declaring the government entitled to possession of the land, but the case was left open for other necessary orders, judgments and decrees. Reference is made to the orders for greater particularity.

Thereupon the government took possession and has since been in possession of the land, using same, or preparing to use same, as an airplane bombing field.

On January 10, 1941, the land in the Victoria Division was by order of severance taken out of this case, and placed in a similar proceeding (No. 22, Victoria Division) in the Victoria Division, and there remains in this proceeding (No. 55, Galveston Division) the lands in the Galveston Division—approximately 16,500 acres. Commissioners have been appointed and qualified to value the lands, but so far have held no hearings. We gather, however, from statements of counsel that there have been extensive negotiations between the government and the landowners, or some of them, chiefly, however, with respect to the oil, gas, and other minerals on, in and under the lands.

On December 11, 1941, approximately a year after the entry of the orders above mentioned, the Government filed herein its motion for leave to amend such declaration of taking and such orders so as to exclude the oil, gas, and other minerals in and under the land, but denying the owners thereof the right to take such oil, gas, and other minerals for a period of ten years or such lesser period as the Secretary of War may determine to be consistent with the public interest, etc. The government's motion is accompanied by a form of an amended petition which the government desires to file and an amended declaration of taking, dated June 12, 1941, signed by the Secretary of War and which bears the file marks of the clerk of this court showing it to have been filed herein December 2, 1941. We quote the material portions thereof:

"Whereas, I have executed a declaration of Taking of the fee simple title to 16572 acres of land, more or less, in Matagorda County, Texas, dated November 1, 1940, and filed in the above-entitled condemnation proceeding on November 8, 1940.

"And whereas, it was not the intention of the Secretary of War in filing the declaration of taking to acquire title to the oil, gas and other minerals, if any, underlying the land, and it is administratively determined that the ownership of such minerals, if any, is not necessary to the public use for which the lands are so taken;

"Now, Therefore, I, Henry L. Stimson, Secretary of War, acting in said capacity, for and in behalf of the United States of America and pursuant to the authority vested in me, do hereby make and cause to be filed in the above-entitled proceeding this amendment to the aforesaid declaration of taking and do declare that the lands described in the original declaration of taking are taken for the public use of the United States of America for military purposes, in fee simple absolute, excepting all oil, gas and other minerals in and under said land, the land so taken however to be for a period of ten years from November 8, 1940, or for such lesser period as the Secretary of War may determine to be consistent with the public use for which said land is taken, free and clear of all surface easements and rights of occupancy and use of the surface thereof for the purpose of exploring, mining and removing oil, gas and other minerals therefrom. * * *"

A majority of the landowners oppose the government's motion. They appear for the limited purpose of opposing it and to themselves file a motion. They say that under the original declaration of taking, title to the land in fee simple passed to the government and that the court is without power to permit either the declaration of taking or the orders to be amended, and if the court does so, such action will not and cannot

serve to take the title to oil, gas and other minerals out of the government. They say, however, that they desire the title to such minerals divested out of the government, and attack the original declaration of taking and ask that it be set aside in its entirety as void and ineffective on the claim that it does not specify the public use to which the lands are to be put by the government, that its execution by the Secretary of War was an abuse of discretion, in that the public use did not require such minerals, that it was executed and filed by mistake and inadvertence, etc.

In other words, both the government and the landowners who have appeared greatly desire that the latter retain the mineral rights; but they disagree as to the method, the government seeking to eliminate the mineral rights by amendment, the landowners by having the entire proceeding declared void. Then, they say, the government can, in a new proceeding, condemn such part of the fee as may be needed.[1]

■ 1. Landowners ask that the original declaration of taking be set aside as void and ineffective because it did not specify the public use for which the power was sought to be exercised.

The declaration of taking reads, in part, as follows:

"Now, therefore, I, Henry L. Stimson, Secretary of War of the United States of America, under and by virtue of the provisions of the Act of Congress approved August 12, 1935, (U.S.C. 10; 1343a, et seq [10 U.S.C.A. § 1343a et seq.]), which authorizes the acquisition by the Secretary of War of land suitable and necessary for military purposes, and the Act of Congress approved June 26, 1940 (Pub. 667 – 76th Congress [10 U.S.C.A. § 602 note]), which appropriated funds for the acquisition of such land, and the Act of Congress approved February 26, 1931 (46 Stat. 1421 [40 U.S.C.A. § 258a]), do hereby make and file this declaration of taking pursuant to said Acts of Congress, and by virtue and authority thereof do declare that the land described in the petition filed in this proceeding * * * and the fee simple title thereto as aforesaid, are hereby taken under the authority of said Acts of Congress, and that the use for which the same is acquired is for the purpose described in said acts and that the estate hereby taken in said land for the public use aforesaid is in fee simple absolute."

The language employed in the declaration of taking seems, at first blush, too general; yet, upon analysis, it is quite clear. The Secretary's reference to the three statutes are for the stated double purpose essential to a valid declaration under 40 U.S.C.A. § 258a, to-wit: "A statement of the authority under which and the public use for which said lands are taken." The cited statutes show the Secretary's complete authority to proceed, the procedural steps necessary to be taken, and the appropriation bill constituting the final link in that authority. Probably this statement of authority was more complete and detailed than might have been required.

As to the statement of "the public use" for which the lands were taken: consider-

---

[1] The foregoing statement alone demonstrates the importance of the questions to be decided by the court; but its far-reaching effect can only be appreciated by reference to other condemnation proceedings instituted in other divisions of the District based upon declarations of taking executed not only by the Secretary of War but the Secretary of Navy as well. Thousands of acres of coastal lands have been condemned and taken upon request of the War Department in the Brownsville Division; and coastal lands necessary for the erection of the United States Naval Air Base and outlying fields at Corpus Christi have been similarly taken at the request of the Secretary of the Navy.

It was frankly admitted upon this hearing that the government intended to ask leave of the court to file amended declarations, seeking to eliminate the mineral rights, in some of the causes pending in the other divisions; and since the submission of this motion the government has asked leave to file an amended declaration in C.A. 87, Corpus Christi Division, dealing with the lands upon which the United States Naval Air Base has already been built. In these cases, as well as the instant case, the respective Secretaries of War and of the Navy, as we are informed, expect to take a like position; that is, that it was not their intention to acquire title to the mineral estate, and administratively determining that the ownership of such minerals was not necessary to the public use for which the lands were taken. In C.A. 87, Corpus Christi Division, the original taking was in August, 1940; and leave to amend was asked in December, 1941.

ing the language used as a whole, it is clear that the public use for which the lands were taken was for some one or all of the "military purposes" set out in 10 U.S.C.A. § 1343a et seq. Landowners' criticism of the language used by the Secretary that "the use for which the same is acquired is for the purpose described in said Acts" is too technical. They do not contend that the Secretary did not intend to use, or indeed has not used, the lands for some one or more of the military purposes for which he was authorized to take the lands under the statute. Indeed they apparently concede in their briefs that the lands have been used for bombing and machine gun ranges in connection with air corps stations and depots, the purpose for which the petition stated they were to be used.

There is no merit in landowners' contention that the declaration of taking does not contain a sufficient statement of "the public use" for which the lands were taken.

■ 2. Landowners also move that the court set aside the original declaration of taking in its entirety and declare same null and void because there was an abuse of discretion on the part of the Secretary of War, in that the Secretary now admits in the amended declaration that he did not intend to condemn the mineral estate and has administratively determined that the ownership of such minerals was not necessary to the public use for which the lands were taken. The government, denying that the amended declaration discloses any abuse of discretion, at the same time asks leave to file the amended declaration and except the minerals from the fee-simple estate taken.

Landowners offered no evidence as to the Secretary's alleged abuse other than the amended declaration now sought to be filed by the government, dated June 12, 1941; and two previous proposed amendments signed by the Secretary but never filed or sought to be filed, dated March 7, 1941, and May 7, 1941, respectively.[2] Landowners, while not formally served in person with process, knew of these proceedings at or about the time they were instituted and have waited more than a year to file their motion to void the declaration in its entirety. We are of the opinion that the evidence tendered (the three proposed amended declarations) fails to support defendants' contentions that the Secretary abused his discretion to such an extent as to justify this court in declaring the declaration void.

■ 3. Nor would we be justified in sustaining the government's motion to allow the declaration of taking, etc., to be amended. The statute (Title 40 U.S.C.A. § 258a) provides that upon the filing of the declaration of taking and of the deposit in court, to the use of the persons entitled thereto, of the amount of the estimated compensation, "title to the said lands in fee simple absolute, or such less estate or interest therein as is specified in said declaration, shall vest in the United States of America, and said lands shall be deemed to be condemned and taken for the use of the United States, and the right to just compensation for the same shall vest in the persons entitled thereto * * *."

[2] In all three of the proposed amended declarations of taking the Secretary first recites the execution of the original declaration, and that "it was not the intention of the War Department in filing the declaration of taking to acquire title to the oil, gas and other minerals, if any, underlying the land, and it is administratively determined that the ownership of such minerals, if any, is not necessary to the public use for which the lands are so taken."

The Secretary then declares that he has made and caused "to be filed in the above entitled proceeding this amendment to the aforesaid declaration of taking, and do declare that the lands described in the original declaration of taking are taken for the public use of the United States for military purposes."

In the first of the proposed amendments the Secretary excepts all oil, gas and other minerals completely. In the second he excepts all oil, gas and other minerals, in and under said land, "the land so taken, however, to be for a period of ten years from November 8, 1940, free and clear of all surface easements and rights of occupancy and use of the surface thereof for the purpose of exploring, mining and removing oil, gas and other minerals therefrom."

In the third proposed amendment, now sought to be filed, the Secretary excepts all oil, gas and other minerals in and under said land, "the land so taken, however, to be for a period of ten years from November 8, 1940, or for such lesser period as the Secretary of War may determine to be consistent with the public use for which said land is taken, free and clear," etc.

It is clear, under the very terms of the statute, that fee-simple title to the land was vested in the government by and at the time of the original declaration of taking and the simultaneous order of the court on November 8, 1940, declaring such title had vested in the government, Hessel v. A. Smith & Co., D.C.Ill., 15 F.Supp. 953; United States v. Eighty Acres of Land, D. C.Ill., 26 F.Supp. 315; United States v. Certain Parcels of Land, D.C.Md., 40 F. Supp. 436. True, the court's final judgment on the declaration of taking, dated November 12, 1940, ordering delivery of possession to the government, contains the recital: "and this cause is held open for such further orders, judgments and decrees as may be necessary in the premises." This retention of jurisdiction, however, was patently for the purpose of carrying out the remaining provisions of the statute dealing with the award and distribution of compensation for the lands.

It is not necessary to discuss the right of the court, upon prompt showing of a manifest error in a declaration of taking, to allow a correction; for under the circumstances existing here, where there has been a delay of more than a year in asking leave to amend, where there have been negotiations between the parties in an attempt to eliminate the question of mineral rights, we are of the opinion that the government's title may not be divested without the consent or approval of Congress. We do not find such consent expressed in any existing statute. There is no express authority for the filing of an amended declaration.[3]

By Art. 4, Sec. 3, Clause 2, of the Constitution, Congress is given the power to dispose of and make all needful rules and regulations respecting the territory or other property belonging to the United States. This restriction upon the right of the executive or other departments to dispose of public property has been jealously guarded; and the concern of Congress has been particularly manifested with reference to mineral lands of the government.

All the circumstances discussed upon the hearing justify the conclusion that the Secretary of War, or those acting for him, at the time of the original declaration, were not aware of the fact, well known in Texas, that our coastal lands have considerable potential mineral value; and that in the very understandable urge of preparing for national defense, those acting for the Secretary then failed to take into consideration the possible cost to the Government of acquiring these mineral estates. Of course the question for us to determine is whether or not the Secretary has the statutory authority to amend the declaration and thereby eliminate those mineral rights. We hold that he does not have such authority and suggest that the remedy lies with Congress, not with the courts.

The government's motion for leave to amend will be denied. Landowners motion to set aside the declaration will be overruled. Let an order be prepared and presented accordingly.

---

[3] Compare Declaration of Taking Act for lands in the District of Columbia, 40 U.S.C.A. §§ 370, 383, where provision is made for amendment provided the amendment will not impair substantial rights.