JONES ET AL., APPELLEES, *v.* KECK, APPELLANT.

(No. 667—Decided April 9, 1946.)

*Mr. Charles S. Leasure* and *Mr. Homer E. Walters,* for appellees.

*Messrs. Graham & Graham,* for appellant.

PUTNAM, J.   This is an appeal on questions of law from a decree of the court below perpetually enjoining the defendant from removing a certain airplane hangar from premises under lease to the plaintiffs.  It is alleged that the decree is contrary to the weight of the evidence and contrary to law.

The petition alleges that the plaintiffs are the lessees of certain real estate, known as the "old municipal airport," consisting of 165 acres; that by the terms of the lease they have the exclusive right to the use and

occupancy of the land and the buildings thereon including the hangar in question; and that the defendant threatens to enter upon the land, tear down the building and remove same, to their irreparable damage and for which they have no adequate remedy at law. The prayer is for a temporary restraining order which was granted.

The answer is a general denial with an averment that the defendant was the owner of the hangar.

The facts pertinent to the determination of this case. as shown by the record, are as follows:

In 1939, the city of Zanesville, being the then owner of the lands in question, which were being used for an airport and on which was located the hangar which was not the property of the city but of a third party, attempted, through its service director, to lease the lands to a corporation known as Zanesville Flying Service, Inc., of which defendant was an officer. The lease was signed, acknowledged by the service director, approved by the city solicitor and recorded. It was not, however, executed after passage of an ordinance and advertisement for bids as required by Section 3699, General Code. By the terms of the lease it was for a period of three years, renewable for three years upon giving notice. The lease provided for an annual rental of $1 per year, was made assignable upon consent of the city, and made provision for the removal by the lessees of any hangar placed thereon by them, within 90 days after termination of the lease. It was stipulated that the lessees should construct a hangar giving specifications therefor. Although the lease provided for the exclusive use of the premises by lessees, it contained a stipulation that third parties who owned hangars on the premises should continue to have the right to use them for private flying and under the leases which they respectively had with the city or the United States Government. Defendant and his

assignors purchased a hangar located on the property from a third party and remodeled same at a total cost of $1,500. This lease was subsequently assigned to the defendant for a valuable consideration and the assignment was assented to by the service director of the city of Zanesville and recorded. Within the time limit notice was given the safety director of intention to renew the lease, three-years additional rental was paid to the service department and a receipt therefor was issued for years 1942, 1943 and 1944. This occurred on July 1, 1942. On June 20, 1942, one of the plaintiffs, Roland Jones, wrote a letter to and appeared before the city council and questioned the legality of the lease and the advisability of renewing the same. No adverse action, however, toward the defendant was taken. Defendant continued in possession of the premises, if not under at least in accordance with the lease provisions, except for a period of uncertain duration after Pearl Harbor when the premises were closed by the United State Government. In the meantime Jones and certain of his associates, at least Louis Butler a plaintiff herein, were negotiating with defendant concerning the use of the premises for themselves. On July 6, 1943, the city passed an ordinance for the sale of the airport premises and advertised for bids. The Zanesville Chamber of Commerce was the highest bidder at $20,000, and on December 11, 1943, the city executed a deed to the First National Bank of Zanesville as trustee for purchasers. On December 15, 1943, such bank, as trustee, leased the premises with the buildings thereon to a partnership composed of plaintiffs herein. Shortly thereafter and prior to the institution of this suit, on February 7, 1944, defendant attempted to remove the hangar and this litigation resulted.

The record shows conclusively that the chamber of commerce, the First National Bank, trustee, and two

of the members of the partnership, Jones and Butler, had actual notice of the purported lease to the defendant and the terms thereof, prior to the sale on December 11, 1943, through conversations and arguments between their officers and trustees and the defendant. It is also clearly shown that the city of Zanesville never attempted to revoke any rights which the defendant might have had in such premises, except as would follow by the passage of the ordinance of sale on July 6, 1943, and subsequent proceedings.

It is conceded by all parties that the purported lease agreement of September 30, 1939, is void as a lease by reason of the failure to comply with Section 3699, General Code.

Plaintiffs contend that at most the defendant was a tenant at will, and that whatever rights he had were lost through laches. Defendant maintains that he is entitled to remove the hangar under the doctrine of unjust enrichment and relies chiefly on the case of *Lee* v. *Board of Commrs., Monroe County,* 114 F., 744.

The first question to be considered is what was the status of the defendant under the above facts?

In spite of the concession of plaintiffs that at most defendant was a tenant at will, we do not think that his status could be at that level. A lease is a conveyance of an estate in real property for a limited term, with conditions attached, in consideration of rent. *Dean* v. *Brower,* 119 Cal. App., 412, 6 P. (2d), 580. Anything which creates the relationship of landlord and tenant is a lease. A tenancy at will is an estate in real property and comes within the term lease. Nor would such a determination be of any assistance to the plaintiffs, as a tenant at will is entitled to a notice to quit and a reasonable time thereafter to remove his property.

Was defendant a trespasser? A trespasser on land is one, who having no title to or right to possession of

the land, makes entry thereon without consent, permission or license.

A license in respect to real estate is an authority given by the owner to another to do a particular act or series of acts upon the land without grant to the licensee of any estate or interest in the land.

Section 3939, General Code, gives a municipal corporation the right to acquire, construct, maintain and operate airports and landing fields. Such airports and landing fields are of the character of public utilities and all laws applicable to municipally owned utilities are applicable to such airports and landing fields. *State, ex rel. Chandler, v. Jackson,* 121 Ohio St., 186, 167 N. E., 396.

Section 4326, General Code, places in the director of public service the management of public utilities of municipal corporations. Although the director of public service could not "lease" the premises by reason of Section 3699, General Code, certainly his power to manage and regulate under Section 4326, General Code, included the power to issue licenses and permits which did not arise to the dignity of an estate therein. The entry of the defendant on the lands was with the consent and authority of the service director, and he could not be a trespasser. It is evident that he was a licensee. The terms of his license were such as were embodied in the written instrument and were applicable to a license and did not raise it to the level of a lease. Provisions, however, such as those giving the right to exclusive possession of the premises, etc., could not apply as they were characteristic of a lease.

Being a licensee, what were defendant's rights?

There being no reservation in the deed from the city to the bank, the sale revoked defendant's license. 37 Corpus Juris, 298, Section 201.

However, the revocation of the license under which the article was annexed to the land does not of itself

deprive the licensee of the right of removal, he being entitled to a reasonable time to remove the article. 26 Corpus Juris, 680, Section 43; 11 R. C. L., 1083, Section 26.

In 26 Corpus Juris, *supra,* it is stated: "The invalidity of the grant or deed on the faith of which the annexations are made does not exclude a claim that, having been made by permission, they are removable as personalty. But a grant of permission by one lacking in jural capacity is ineffective for this purpose, as has been decided in the case of such a grant by a married woman and by a minor child." Although the service director lacked jural capacity to execute a lease, he did have jural capacity to grant a license or permit.

It is to be remembered that the city's grantee, the bank, as trustee, the Chamber of Commerce as *cestui que trust,* and the bank's lessees the plaintiffs herein, all had actual knowledge of the written instrument, the terms thereof and defendant's use of the premises with the consent of the city through its service director.

In 26 Corpus Juris, 681, Section 46, it is stated: "The authorities are in unison to the effect that such an agreement will prevail as against a subsequent purchaser or mortgagee of the realty who has notice, actual or constructive, of the agreement."

Under certain conditions, in Ohio, the rule is restricted to actual notice, but this requirement is met in the instant case. *Holland Furnace Co.* v. *Trumbull Savings & Loan Co.,* 135 Ohio St., 48, 19 N. E. (2d), 273.

Although the premises were advertised for sale in July 1943, the sale was not consummated until December 11, 1943. The city might have rejected all bids and refused to sell. Consequently the license did not expire until December 11, 1943. Less than 60 days intervened in winter until February 7, 1944, when

defendant was enjoined, and during that time negotiations were in progress. We do not think this was an unreasonable time under the circumstances for removal, and defendant was not guilty of laches.

It must be remembered that defendant is not seeking to exercise rights under a void contract, as was the case in *Buchanan Bridge Co.* v. *Campbell et al., Commrs.,* 60 Ohio St., 406, 54 N. E., 372. He is not seeking to hold the exclusive possession of the premises under the terms of the lease. He seeks only to remove a fixture lawfully placed upon the premises with permission for removal. The city had a right to grant such permission in the form of a license, written or oral, and if the purchaser took the property with actual knowledge thereof, which it did, and if the defendant is not estopped by laches, which he is not, his right to the building is clear and equity should and does so declare.

The decree is reversed and the cause remanded.

*Decree reversed.*

SHERICK, P. J., and MONTGOMERY, J., concur.