Andrew J. BURKHART and Lillie Burkhart, his wife; John H. O'Brien and Agnes O'Brien, his wife; and Andrew J. Burkhart and John H. O'Brien, a copartnership, doing business as Petroleum Products, Appellants,

v.

UNITED STATES of America and Irwin A. Falk and Vuelta C. Falk, his wife, Appellees.

No. 13425.

United States Court of Appeals Ninth Circuit.

June 28, 1955.

T. C. Boyle, Seattle, Wash., for appellant.

Perry W. Morton, Asst. Atty. Gen., Hart Snyder, Special Atty., Dept. of Justice, Spokane, Wash., S. Billingsley Hill, Roger P. Marquis, John C. Harrington, Attys., Dept. of Justice, Washington, D. C., for the United States.

Charles L. Powell, Moulton, Powell, Gess & Loney, Kennewick, Wash., for appellee Falk.

Before STEPHENS, POPE and FEE, Circuit Judges.

## JAMES ALGER FEE, Circuit Judge.

The present controversy arises in a condemnation proceeding instituted in January, 1951, to acquire fee simple title to lands for use in connection with McNary Dam on the Columbia River. Declaration of taking was filed, and the court ordered that possession of the parcel here involved be given to the United States on July 2, 1951. This tract, comprising about 12 acres, was owned by the Falks, who have filed an appeal. They had leased a lot 200 feet by 150 feet to Andrew J. Burkhart and Lillie Burkhart, John H. O'Brien and Agnes O'Brien, and a partnership consisting of Burkhart and O'Brien doing business as Petroleum Products in the fall of 1948 for a term of five years for operation of a gasoline service station, with option to extend the lease for another five years. The Burkharts and O'Briens and the partnership were named as parties in the condemnation proceeding. In January, 1952, the government filed a motion to dismiss these parties from the proceeding. This motion was denied at the time, but subsequently there was a hearing ostensibly on the interpretation of the lease. The lessees objected to the participation of the government in the hearing. The Falks objected that orderly procedure would be to determine just compensation and subsequently to settle the rights of the claimants to the amount so paid. Testimony was taken on the interpretation to be placed on the written lease, which contained the following clause:

"If all or any part of the subject property shall be taken by any public agency for public use or purpose the entire amount paid as compensation for the property taken and as severance damages resulting to the remaining property of lessors shall be paid to and shall be retained by lessors as their own property. Lessees shall then be entitled to remove all their property, including the service station structure from the premises and each party will look to the condemnor for compensation on account of any and all damages claimed or asserted by such party on account of or resulting from such taking."

On March 13, 1952, the court filed findings of fact and conclusions of law. It was decided that, if the lessees were still in possession of the improvements, there had been no taking thereof and the lessees were entitled to no part of the just compensation. Judgment was entered dismissing the lessees from the proceeding. A previous appeal was taken to this Court and dismissed.[1] Upon remand, the District Court entered an amended judgment vacating and cancelling the previous one, reciting that there was no just reason for delay, and "adjudicating the separate claim and interest of defendants Burkhart and O'Brien" finally. This instrument contains a judgment "that the service station equipment and improvements placed upon said Tract Q–1115 by the defendants Burkhart and O'Brien remain personal property; that there has been no taking of said personal property and that defendants Burkhart and O'Brien are entitled to no part of the just compensation payable * * * and said defendants Burkhart and O'Brien are hereby dismissed from this action." From this judgment, defendants Falk and defendants Burkhart and O'Brien appeal separately.

◼ The appeal of the Falks must be dismissed. There is no final order as to them. In our previous opinion, this doubt was suggested. Burkhart v. United States, supra, 210 F.2d at page 605, note 4:

"Should that question arise, it would be necessary to consider whether, since only a portion of Falk's claim was disposed of, the or-

1. Burkhart v. United States, 9 Cir., 210 F.2d 602.

der as to him could possibly be made appealable."

If, after a trial, the court should instruct the jury that between the government and the landowners the service station in operation is not to be considered as exemplifying the highest and best use of the parcel as a whole, or instructs that certain structures are personalty and not realty, then appeal by the landowners from the judgment may, of course, lie. Similarly, the government may appeal if the business of operating the service station is evaluated. The condemnation proceeding is brought for the purpose of compensating those interested for the fair full market value of the land, assuming a seller willing but not compelled to sell and a buyer able but not compelled to buy the particular tract.

Attention is now directed to the appeal of the lessees. Here a determination was made that the lessees had no interest in the case. The order is thus appealable.

■ The error of the court, which was pointed out above, is that there was an attempt made here to determine what part of the structures erected upon this land were realty and which were personalty merely by an inspection of the terms of the lease. It is perfectly true, at certain times the documents do control and establish the title so that a portion of the bundle of rights only is condemned. Cf. Boston Chamber of Commerce v. City of Boston, 217 U.S. 189, 30 S.Ct. 459, 54 L. Ed. 725. It is also clear that at times the character of structures upon land may be fixed by agreement so that it becomes binding upon third persons. But it is well settled that an agreement of landlord and tenant does not settle the character of structures upon the land as personalty or realty so far as a condemnor is concerned. The reason is hinted in what has heretofore been said.

"The inherent character of these structures is real estate; no agreement can change that character, though the landlord may waive the right which might otherwise accrue to him from the character of the structures placed upon his land. At the most, that is all that this agreement did." United States v. Seagren, 60 App.D.C. 183, 50 F.2d 333, 335, 75 A.L.R. 1491.

■■ While it is true, as noted above, that the agreement of the parties may terminate all interest of a lessee upon initiation of condemnation proceedings, the lease in this case, when construed in the light of local law, clearly did not do so, but contained only clauses of dubious import. Therefore, the provisions of the declaration of taking should have had painstaking consideration. The sovereign takes all classes of property, real or personal, without distinction. If appropriate measures have been taken to establish acquisition of this property, a necessity in the public interest, the only question remaining is the amount of just compensation. Here the problem is simplified to a certain extent because, by the use of the procedure providing for a declaration of taking, the government limited its acquisition to interests in real property. The procedures specified in 40 U.S.C.A. § 258a were followed:

"Upon the filing said declaration of taking * * * title to the said lands in fee simple absolute, or such less estate or interest therein as is specified in said declaration, shall vest in the United States of America, and said lands shall be deemed to be condemned and taken for the use of the United States."

In view of the language of the statute, it was incumbent upon the government to designate expressly the interest less than fee simple title or the exceptions thereto by excluding the leasehold or fixtures and structures, if that were desired. Between condemnor and the parties interested in the parcel, the former acquires all the real property. What is real property is a question for the trier of fact. The declaration of taking wipes out all

interests.[2] Just compensation must be paid for the whole. Normally speaking, these declarations do except the portions of the lands which the United States does not desire to acquire.[3] In this instance, there was a specific exception which reads as follows:

"The estate taken for said public uses is the fee simple title thereto, subject, however, to existing easements for public roads and highways, for public utilities, for railroads and pipe lines, and with respect to Tracts Q–1115 and Q–1117, subject also to rights and interests of the Columbia Irrigation District, except any and all assessments thereby."

Indeed, this declaration of taking, which transfers the title according to law to the government, contains the specific and positive inclusion of these structures in the following language:

"The sum estimated by me as just compensation for said lands with all buildings and improvements thereon and all appurtenances thereto and including any and all interests hereby taken in said lands is set forth in Schedule 'A' herein * * *."

The question of the division of the total award between landlord and tenant was not particularly of any concern to the government. Usually, the courts treat the proceeding for the division of the proceeds as one of interpleader, where the government deposits the just compensation for the whole parcel and the landlord and tenant come in as claimants. Because of the view we take that the government really sought to cut down the award by eliminating certain features which may properly be considered as part of the realty, the determination must be reversed.

■ The clauses on which the trial judge based his opinion are by no means clear. The paragraph should not be construed against the tenants unless it is found without doubt intended to divest them of every vestige of interest in the realty taken. The trial judge thought this paragraph ambiguous. We agree. It was not the stock clause used to provide for condemnation proceedings. Noteworthy is the absence of any language bringing the term of the lease to a close.[4] No clause cuts off the inter-

2. "The taking was not of the rights of designated persons in the property but of the property itself. '* * * an unqualified taking in fee by eminent domain takes all interests and as it takes the res is not called upon to specify the interests that happen to exist.' Duckett & Co. v. United States, 266 U.S. 149, 45 S.Ct. 38, 69 L.Ed. 216. * * *." Quoted from Meadows v. United States, 4 Cir., 144 F.2d 751, 752–753.

"Consequently when the Government took the fee simple title subject only to highway easements, it took all the lesser estates * * *." United States v. Sunset Cemetery Co., 7 Cir., 132 F.2d 163, 165.

3. For a case where the government's title to minerals, unintentionally taken by a declaration of taking of fee simple title, could not be "divested without the consent or approval of Congress", see United States v. 16,572 Acres of Land, D.C., 45 F.Supp. 23, 27.

"Since this proceeding must be based upon a fact which has already taken place

as shown by the record of the court, neither by amended complaint nor by supplemental complaint should the government be permitted to attempt to change the character of the proceeding or the nature of its possession." United States v. Bauman, D.C., 56 F.Supp. 109, 113.

Moreover, "the proceeding may not be subsequently abandoned so as to deprive the owner whose property has been taken of his constitutional right to have the damages assessed and paid in money." United States v. Sunset Cemetery Co., supra, 132 F.2d at page 164.

4. "The interest of the respondent Gekco Company under the lease from the appellant, is an estate for years, and therefore is property, subject to ownership. * * * As the owner of such estate it is guaranteed just compensation before its title can be divested under the power of eminent domain. * * * According to the majority of the decisions, the taking of the entire demised property by condemnation proceedings operates to release a tenant from liability for subse-

ests of the lessee in the property.[5] The lease does expressly provide that the proceeds were to go to the lessor, but, as has been pointed out, the government had no interest or concern in the distribution.

■ Evidence was taken in aid to construction of the document. It seems established that, when the lease was signed, condemnation by federal authorities was not even contemplated, much less provided for by the parties. The clauses seem to envisage a taking by the State of Washington, since in such a proceeding not only is there compensation for property taken, but for resulting damage.[6] In such event, the lessors and lessees, respectively, would have looked to the condemnor for damages. Similarly, a glance shows that neither the parties nor the draftsman covered the situation where the governmental authority would condemn the buildings and structures. By the declaration of taking here, the United States took the realty with all the fixtures and appurtenances. It is of no consequence that the landlord, the lessees and the governmental agents may not have thought the service station structures passed. If these were part of the realty, the United States is the owner thereof and cannot be divested of title except by following statutory procedures expressly provided therefor. If the lessees attempted to remove part of the realty, the government agents would be bound to resist.

The question whether these structures are part of the realty therefore is one which must be determined by evidence as to their permanence, the method of attachment, the weight thereof and whether parts thereof are sunk in the soil. While there are other provisions of the lease which indicate that the parties considered these structures as realty, it is not their intention which prevails. The lessees did not lose their interest in the realty if the government took and now owns any portion of the structures which they placed on the land.

In view of the fact that lessees probably have an interest in the land (although the point is not here decided), this Court will not presently pass upon any allocation of the award.[7]

The cause is reversed as to the lessees and remanded with directions to proceed to trial between the government and the parcel and that any question as to allocation of the just compensation between the claimants be dealt with after the award for the whole has been settled.

Reversed and remanded

---

quently accruing rent * * *." City of Pasadena v. Porter, 201 Cal. 381, 387, 257 P. 526, 528, 53 A.L.R. 679. See also Olson Land Co. v. Alki Park Co., 63 Wash. 521, 115 P. 1083. But, as against the condemnor, the lessees' compensable interest in the property is not at an end unless the lessors and lessees clearly contract to that effect. Gawzner v. Lebenbaum, 9 Cir., 180 F.2d 610; United States v. 1010.8 Acres of Land, D.C., 62 F.Supp. 277.

5. This case does not involve a so-called "full condemnation" clause as in the case of United States v. Honolulu Plantation Co., 9 Cir., 182 F.2d 172, 177, where such a clearly drawn clause operated as a condition subsequent to the lessee's interest and "destroyed any property interest of Plantation therein." Also, in United States v. Petty Motor Co., 327 U.S. 372, 376, 66 S.Ct. 596, 599, 90 L.Ed. 729, where the court was dealing with "a

clause for automatic termination of the lease on a taking of property for public use by governmental authority", it was held that the lessees "had contracted away any rights that it might otherwise have had." A comparison of the clauses involved in those cases and the ambiguous one here exposes the difference.

6. Washington State Constitution, Article 1, § 16: "No private property shall be taken or damaged for public or private use without just compensation * * *." (Emphasis supplied.)

7. Although the District Court has the power to try questions between the lessor and lessee prior to the submission of the question of damages, its decision on such a course should "finally [come] to rest upon the determination of that procedure which will best promote the ends of justice." United States v. 150.29 Acres of Land, D.C., 47 F.Supp. 371, 373.