UNITED STATES of America,
Appellant,

v.

Mrs. Vesta M. PINSON and J. H. Pinson,
Appellees.

No. 20965.

United States Court of Appeals
Fifth Circuit.

May 11, 1964.

Charles L. Goodson, U. S. Atty., Slaton Clemmons, Asst. U. S. Atty., Atlanta, Ga., Ramsey Clark, Asst. Atty. Gen., Roger P. Marquis, Edmund B. Clark, Attys., Dept. of Justice, Washington, D. C., for appellant.

Herbert R. Edmondson, Gainesville, Ga., for appellees.

Before MARIS,* GEWIN and BELL, Circuit Judges.

MARIS, Circuit Judge.

This is an appeal from an order entered by the District Court for the Northern District of Georgia in a condemnation suit brought by the Government for the taking of property in connection with the establishment of the Buford Dam and Reservoir Project in Georgia and for the ascertainment and award of compensation therefor.

Two adjoining tracts of land bordering on the Chattahoochee River are involved in the appeal. One of these tracts, No. I-933 containing 45.20 acres, was owned by J. H. Pinson and the other, No. I-945 containing 80.80 acres, by Mrs.

* Of the Third Circuit, sitting by designation.

Vesta M. Pinson. In the case of each of these two tracts the declaration of taking filed by the Secretary of the Army described the estate taken for public use as "the fee simple title, subject to existing easements for public roads and highways, public utilities, railroads and pipe lines." [1] By certain prior deeds the Georgia Power Company became the grantee of flowage easements or flood rights over 20.66 acres of tract No. I–933 and 37.42 acres of tract No. I–945. That company was named in the Government's complaint as a possible claimant and it filed a claim for compensation in the proceedings. Subsequently the compensation payable for tract No. I–933 was determined by a jury to be $15,616.00 and the compensation for tract No. I–945 was determined by stipulation to be $27,000.00. Of these awards all but $2,000.00 in the case of tract No. I–933 and $3,500.00 in the case of tract No. I–945 were disbursed to the owner claimants, the latter sums being held in the registry of the court to abide the determination of the claim of the Georgia Power Company.

Thereafter the owner claimants, J. H. Pinson and Mrs. Vesta M. Pinson, moved the court to disburse the sum of $5,500.00 thus being held in the registry to them instead of to the Georgia Power Company, asserting (1) that the Power Company's easements were excepted from the taking and had not been condemned, (2) that the Power Company's easements were not compensable because the company had not shown that it had obtained a federal license to erect a dam on the Chattahoochee River, and (3) that the Power Company's easements, even if compensable, were actually valueless. The motion was opposed by both the Georgia Power Company and the Government. Upon consideration of the motion the district court held that the flowage easements of the Georgia Power Company

were excepted from the taking and had not been condemned. The court accordingly entered an order directing the disbursement of the funds on deposit in its registry to the former owners of the tracts in question, $2,000.00 to J. H. Pinson and $3,500.00 to Mrs. Vesta M. Pinson. The Government, being aggrieved by this determination by the district court that its taking had not included the Georgia Power Company's flowage easements, thereupon took the appeal which is now before us.

■■ The sole question presented by this appeal is whether the clause in paragraph 3 of the declaration of taking— "subject to existing easements for public roads and highways, public utilities, railroads and pipe lines"—excepted from the taking the flowage easements or flood rights of the Georgia Power Company, as the district court held. Stated more precisely the question is whether the phrase "existing easements for * * * public utilities" includes the flowage easements of the Georgia Power Company. The question is one of federal law, but since we have not been referred to any federal case which has decided it, we must turn for its solution to applicable principles of general law. [2] Admittedly the Georgia Power Company is a public utility company and its flowage easements were existing at the time of taking. Upon this reasoning the district court concluded that the flowage easements were included in the clause which excepted existing easements for public utilities from the taking. We do not think, however, that the solution of the question can be arrived at so easily.

■ In construing the clause of the declaration of taking here in question the intention of the United States as author of the declaration, to be gathered from the language of the entire declaration and the circumstances surrounding

---

1. Paragraph 3 of the declaration of taking states:

"3. The estate taken for such public uses with respect to Tracts Nos. I–933; I–945; I–958; and O–1520 is the fee

simple title, subject to existing easements for public roads and highways, public utilities, railroads and pipe lines."

2. Bumpus v. United States, 10 Cir. 1963, 325 F.2d 264, 266.

it, must be considered.[3]  Looking first at the language of the clause itself we must remember that "public utilities" is a phrase of varied meanings.  It is true that it commonly refers to corporations or individuals engaged in the business of supplying the public generally with commodities or services which are of public consequence and need and which the public has the right to demand.  But the phrase is also often used in a more restricted sense to denote the physical facilities themselves which have been dedicated by their owners to the service of the public.[4]  We think that in this declaration of taking the phrase was used in this sense of physical facilities devoted to the public service rather than to describe corporations or individuals engaged in business as public utilities.  The use of the preposition "for" in the phrase "existing easements for * * * public utilities" indicates a reference to easements needed *for* the construction and maintenance of facilities rather than easements belonging to public utility companies or held by them.  The rule of *ejusdem generis* points to the same result.  In the context of "easements for public roads and highways, public utilities, railroads and pipe lines" the public utilities referred to must be those physical facilities, such as power lines, water lines, sewers, etc., which are similar in nature to those specifically enumerated.  The flooding of land under a granted right to do so is clearly not in this category.  We do not regard New York Telephone Co. v. United States, 2 Cir.1943, 136 F.2d 87, which was relied upon by the district court, as authority to the contrary.  For the easements which were held in that case to be excepted from the taking under a clause in the declaration of taking excepting "existing public utility easements" were all physical facilities devoted to the public service, namely, underground telephone ducts, cables, manholes and appurtenances.

When we turn to the other provisions of the declaration of taking we find ample support for this reading of the phrase "public utilities."  In addition to tracts Nos. I–933 and I–945 various other tracts were involved in the taking.  Among these was tract No. I–958–E–3, the subject of paragraph 4 of the declaration of taking which in pertinent part reads as follows:

"4.  The estate taken for said public uses with respect to Tract No. I–958–E–3 is a perpetual right, power, privilege and easement to occasionally overflow, flood and submerge the same, and to maintain mosquito control, as may be required in connection with the operation and maintenance of the Buford Dam and Reservoir Project * * * ; subject, however, to existing easements for public roads and highways, public utilities, railroads and pipe lines."

It is perfectly obvious that the existing easements for public utilities which the final clause of paragraph 4 of the declaration of taking saves from being taken cannot have been intended to include flowage easements or flood rights.

3.  Bumpus v. United States, 10 Cir. 1963, 325 F.2d 264, 266.

4.  Pulitzer Pub. Co. v. Federal Communications Commission, D.C.Cir. 1937, 68 U.S. App.D.C. 124, 94 F.2d 249, 251; City of Oakland v. El Dorado Terminal Co., 1940, 41 Cal.App.2d 320, 106 P.2d 1000, 1002.
Thus the courts have held the following to be public utilities: Airports, Jones v. Keck, 1946, 79 Ohio App. 549, 74 N.E.2d 644, 646; Bridges, City of Wilkes-Barre v. Pennsylvania Public Utility Commission, 1949, 164 Pa.Super. 210, 220, 63 A.2d 452, 457; Golf links, Capen v. City of Portland, 1924, 112 Or. 14, 228 P. 105, 106, 35 A.L.R. 589; Parking lots, City of Shawnee v. Williamson, 1959, Okl., 338 P.2d 355, 356–357; Sewers, Chastain v. Oklahoma City, 1953, 208 Okl. 604, 258 P.2d 635, 637; Switch tracks, Stockdale v. Rio Grande Western Ry. Co., 1904, 28 Utah 201, 77 P. 849, 851; Telephone lines, Arkansas State Highway Commission v. Southwestern Bell Telephone Co., 1944, 206 Ark. 1099, 178 S.W.2d 1002, 1005; and Toll roads and bridges, Miami Bridge Co. v. Miami Beach Ry. Co., 1943, 152 Fla. 458, 12 So. 2d 438, 445.

For these are the precise interests in the tract which the Government itself was taking by that paragraph. It would be patently absurd to hold that the Government, in taking by eminent domain a flowage easement over land, intended at the same time to preserve a prior flowage easement held by another over the same land. Certainly the Buford Dam and Reservoir Project could not have been constructed and operated on any such foundation of conflicting flowage rights as that.

Since the clause excepting existing easements from the taking which is set out in paragraph 3 of the declaration of taking with respect to the two tracts involved in this appeal is in exactly the same language as the excepting clause of paragraph 4 which is applicable to tract No. I-958-E-3, both must have been intended to have the same meaning, so far as "existing easements for * * * public utilities * * *" are concerned, and could not have been intended to include flowage easements or flood rights. We are further fortified in this conclusion by the fact that the entire taking was directed toward the acquisition of property needed for use in connection with the establishment of the Buford Dam and Reservoir Project, a project which necessarily involved the flooding of lands adjacent to the Chattahoochee River upon which the dam was to be built. Surely it would require very clear language to hold that under these circumstances flowage easements were intended to be excepted from the taking. The fact that the Government included the Georgia Power Company as a claimant in the complaint is itself persuasive that such was not the intention.

We conclude that the flowage easements and flood rights of the Georgia Power Company in tracts Nos. I-933 and I-945 were taken by the Government in this proceeding. Whether these rights are compensable and, if so, whether they are valueless because of their relatively insignificant extent or because of the inactivity of the Georgia Power Company in acquiring other necessary rights and proceeding with its projected dam we do not decide. These are matters for the district court to determine upon remand.

The judgment of the district court will be reversed and the cause remanded for further proceedings not inconsistent with this opinion.

GEWIN, Circuit Judge (dissenting):

The logical and persuasive opinion of the majority says all that can be said on behalf of the condemning authority in this case, United States of America; but in my opinion it does not say enough, and cannot convert the language used into the meaning desired. Accordingly, I respectfully dissent.

In reaching its conclusion the majority undertakes to determine "the intention of the United States as author of the declaration." As authority for such undertaking, Bumpus v. United States, (10th Cir.1963) 325 F.2d 264, 266, is cited. We do not so construe Bumpus because involved in that decision was the meaning of the word "gravel" which was held to be a word of general meaning and not "a term of art." In the instant opinion, the words used are "terms of art." The controlling rule from Bumpus is as follows:

> "Since the language of the reservation was written by representatives of the United States, it was incumbent upon the United States, since it chose to take less than the entire estate, to describe the estate to be taken with such exactness and certainty that the landowner would know what was reserved to him."

The Second Circuit case of New York Telephone Company v. United States, (2d Cir.1943) 136 F.2d 87, is directly in point. There the language used was "subject to existing public utility easements." Here the language used is "subject to existing easements * * * for public utilities." I can see no distinction in the two phrases quoted. Contrary to the position now taken, the Government in the New York Telephone Case contended that such language excluded all easements of public utilities including

*rights* and *physical* equipment. The Court concluded, accepting the contention of the Government,

"It seems obvious that the *rights and physical equipment* of the Telephone Company were excluded from the condemnation." [Emphasis added.]

The reason the easements of such public utilities are excluded from declarations of taking is known to everyone experienced in condemnation proceedings, and such reason is forthrightly stated in the Government's brief as follows:

"Both Georgia Power and the United States had contended that only easements for the transmission and distribution facilities, the relocation of which were, *as usual, being negotiated,* were intended to be excluded." [Emphasis added.]

Damages or just compensation for the easements of the Georgia Power Company "were, as usual, being negotiated. * * * " That is the reason such easements were excluded—and were intended to be excluded. It is not reasonable to assert that certain easements for public utilities were being negotiated while other easements of the same utility were not being negotiated. Further, it seems to me that the Court is taking on an impossible task when it undertakes to determine "the intention of the United States." The right of eminent domain is a drastic and powerful right, although admittedly a well established and necessary one. Such power should not be loosely exercised and the titles taken should be described with exact "terms of art" so that the landowner will know what is taken and what is left as held in Bumpus.

The majority resorts to the language of Paragraph 4 applicable to Tract No. I-958-E-3, a tract not involved in this litigation. The tracts involved here are designated simply I-933 and I-945. The addition of the letter "E" to tract No. I-958 obviously relates to *easements,* whereas in Tracts I-933 and I-945 the fee simple title is involved. Regardless of that fact, it does not seem appropriate to me to engraft on Tracts No. I-933 and I-945 the language used with respect to Tract No. I-958-E-3. The rights taken are different and accordingly the language used must be different. All that is said by the majority with respect to *flowage easements* described in Paragraph 4 would apply with equal force to *physical equipment* such as transmission lines. The Buford Dam and Reservoir Project could not have been constructed and operated if either one *(physical equipment* or *flowage easements)* of such conflicting rights remained in existence.

The result of this proceeding is to permit the United States to obtain legal advice as to the meaning of the language it has chosen to use. It is obvious to me that the real parties in interest are the Pinsons, the Georgia Power Company, and the New York Trust Company. Neither the Georgia Power Company nor the New York Trust Company has appealed.

Finally, I am in substantial agreement with the reasoning of the Trial Court in its memorandum opinion, which I take the liberty of quoting:

"This civil action was instituted by plaintiff for the purpose of acquiring certain interests in land for the Buford Dam and Reservoir project. It is stated in paragraph 5(a) of the original complaint that:

" 'The estate taken for said public uses with respect to Tracts Nos. I-933, I-945, I-958 and O-1520 is the fee simple title, subject to existing easements for public roads and highways, public utilities, railroads and pipe lines.'

"J. H. Pinson filed an answer in which he asserted ownership in fee simple of the land embraced in the tract designated as Tract I-933 and Mrs. Vesta M. Pinson filed an answer in which she asserted ownership in fee simple of the land embraced in the tract designated as I-945.

"The Georgia Power Company and the New York Trust Company, as

Trustee, filed claims for compensation for certain flowage easements and/or flood rights which the Georgia Power Company alleged it owned in said tracts. Trials were had and verdicts and judgments were entered in favor of J. H. Pinson and Mrs. Vesta M. Pinson fixing the just compensation for the interests taken in Tracts I–933 and I–945, as to each tract, the final decrees providing that stated amounts of the funds deposited should be retained in the registry of the Court 'pending the determination of the claim of the Georgia Power Company.'

"On February 27, 1963, Mrs. Vesta M. Pinson as the former owner of Tract I–945 and J. H. Pinson as the former owner of Tract I–933, filed a joint motion in which they move that the Court 'disburse the balance of the funds now on deposit in the Court to them, instead of Claimants, the Georgia Power Company and New York Trust Company, as Trustee,' on the grounds that:

"1. The original complaint excepted 'existing easements for public roads and highways, public utilities, railroads and pipe lines' and that therefore these interests were not condemned.

"2. Because claimant, Georgia Power Company, has not shown it obtained a federal license authorizing it to construct a dam on the Chattahoochee River and therefore 'said easements are not compensable.'

"3. Because if said easements were compensable, the easements of the Georgia Power Company are valueless 'because of the insignificant amount of acres covered by the easements which it holds in proportion to the area involved' and because of the inactivity of such claimant 'in the last fifty years in acquir-

ing the necessary easements to effectuate the construction of its anticipated dam.'

"This motion is now properly before the Court for determination under Local Rule 21.

"It appears that the two questions presented for determination by the motion are:

"1. Whether or not the flowage easements claimed by the Georgia Power Company were within the exception contained in the condemnation complaint.

"2. If such easements were not covered by such exception, whether such easements are valid, and if valid, whether they have any compensable value.

"Since the ruling here on the first question is controlling, the second question is not reached and is not here determined.

"In the condemnation proceeding filed by the United States in this case and in the Declaration of Taking filed subsequent to the filing of the complaint, the interest acquired in the condemnation proceeding, insofar as the tracts here involved are concerned, is described as follows:

"The estate taken for public uses with respect to Tracts Nos. I–933, I–945, I–958 and O–1520 is the fee simple title, subject to existing easements for public roads, public highways, public utilities, railroads and pipe lines.'

"The words 'subject to' as used in the foregoing exception mean that existing easements of the Georgia Power Company were not condemned. New York Telephone Co. v. United States, 136 F.2d 87, 88; Atlanta Trust Co. v. Federal Land Bank, 195 Ga. 142, 148 [23 S.E.2d 430]; State Revenue Com. v. Columbus Bank &c Co., 50 Ga.App. 486 [178 S.E. 463].

"The Georgia Power Company is a corporation whose principal business is the production, transmission

and distribution of electricity which is regularly supplied to the public and it is a 'public utility' within the meaning of the foregoing exception. Its flowage easements, if valid, were 'existing' at the time of the taking here.

"The Declaration of Taking Act, 40 U.S.C. 258(a), 46 Stat. 1421, provides:

" 'Said Declaration of Taking shall contain or have annexed thereto * * *

" '(3) A statement of the estate or interest in the lands taken for public use.'

"In the case of United States v. Causby, 328 U.S. 256, at page 267, [66 S.Ct. 1062, 90 L.Ed. 1206] the Court said:

" ' * * * an accurate description of the property is essential since that interest vests in the United States.'

"Title vests in the United States upon the filing of the Declaration of Taking and only Congress may divest that title. United States v. Sunset Cemetery Co., [7 Cir.] 132 F.2d 163; Burkhart v. United States, [9 Cir.] 227 F.2d 659. Judge Estes in United States v. 4.43 Acres of Land, [D.C.] 137 F.Supp. 567, at page 572, said:

" ' * * * for the reason that the Government has not acquired in these proceedings the right to make such use of the air space above the "glide angle plane." This is because the Government in each of these proceedings has acquired title to the exact easement or estate which is described in the Declaration of Taking, and nothing more. 40 U.S.C.A. § 258a, 46 Stat. 1421; United States v. 29.40 Acres of Land, D.C.N.J.1955, 131 F.Supp. 84. Furthermore, the Court is powerless to change the Declaration of Taking so as to enlarge the easement or rights which the Government has condemned in these proceedings. United States

v. 16,572 Acres of Land, D.C.S.D. Tex.1942, 45 F.Supp. 23.'

"The above was approved in United States v. Brondum, [5 Cir.] 272 F.2d 642, 645–646.

"It is the contention of the Georgia Power Company that the words 'public utility' easements as used in the exception here discussed, referred to those public utility easements which have been the subject of negotiations by the Government and the Georgia Power Company, i. e., right-of-way easements for transmission and distribution of lines, and did not and were not intended to include flowage easements.

"There is nothing in the proceedings here to indicate that such was the intention of the United States. But it is not the intention that controls here, it is the interest in said lands which was actually taken in these proceedings.

"The interest taken may not be enlarged nor diminished by the Court. United States v. Sunset Cemetery Co., supra; United States v. 6.74 Acres of Land, [5 Cir.] 148 F.2d 618, 619–620; United States v. Brondum, supra.

"Even though, any valid flowage easements of the Georgia Power Company are expressly excluded from the condemnation proceedings, there may, nevertheless, be a taking thereof by the United States. Pumpelly v. G. B. & M. Canal Co., 13 Wall. 166, 20 L.Ed. 557; United States v. Kansas City Ins. Co., 339 U.S. 799, 809 [70 S.Ct. 885, 94 L.Ed. 1277].

"The taking of valid flowage easements is compensable under the rulings in United States v. Virginia Electric [and Power] Co., 365 U.S. 624 [81 S.Ct. 784, 5 L.Ed.2d 838] and Augusta Power Company v. United States, Ga.1960, 278 F.2d 1, and the owner's remedy is under the Tucker Act, 28 U.S.C.A., § 1491; United States v. Causby, 328 U.S. 256, 267 [66 S.Ct. 1062, 90 L.Ed.

1206]; Fonalledas v. United States, [123 Ct.Cl. 483] 107 F.Supp. 1019.

"Since the easements of the Georgia Power Company were not condemned, no compensation for same can be awarded in this proceeding, and consequently the motion of Mrs. Vesta M. Pinson, the owner of Tract No. I–945, and J. H. Pinson, the owner of Tract No. I–933, that the balance of the funds now on deposit in the Court be disbursed to them instead of the claimants the Georgia Power Company and the New York Trust Company, as Trustee, is granted and orders to disburse the balance of the funds now on deposit to said claimants, Mrs. Vesta M. Pinson and J. H. Pinson, may be prepared and presented.

"This the 3rd day of May, 1963.
"Boyd Sloan
"United States District Judge"

I would affirm the judgment of the District Court.