**In re DWE SCREW PRODUCTS, INC., Debtor.**

**Bankruptcy No. 92–33506–S.**

United States Bankruptcy Court, N.D. Ohio, W.D.

March 17, 1993.

John Hunter, Jr., Toledo, OH, for debtor.

H. Buswell Roberts, Jr., Toledo, OH, for Henry County Community Improvement Corp.

### MEMORANDUM OPINION AND ORDER

RICHARD L. SPEER, Bankruptcy Judge.

This cause comes before the Court upon the Objection of Henry County Community Improvement Corporation (hereafter "HCCIC") to Debtor's Motion to Extend Time to Assume or Reject Leases of Non–Residential Real Property & Motion for Order Compelling Debtor to Make Timely Lease Payments and Debtor's Motion and Reply. At the hearing, the parties were afforded the opportunity to present evidence and arguments they wished the Court to consider in reaching its decision. The Court has reviewed the entire record in this case. Based upon that review, and for the following reasons, this Court finds that HCCIC's Motion Objecting to Extend Time should be Dismissed as Moot; that its Motion Compelling Debtor to Make Timely Lease Payments should be Dismissed as Moot; and that Debtor's Motion for Approval for Assumption of Executory Contract should be Denied.

### FACTS

The City of Napoleon (hereafter "Napoleon") loaned HCCIC money to construct real property. In 1986, HCCIC and Debtor entered into a ten (10) year lease, including option to purchase, for occupancy of the constructed premises. Pursuant to the lease, Debtor's annual rent obligation during the first four (4) years was Twenty Four Thousand and 00/100 Dollars ($24,000.00). Annual rent for the remaining six (6) years totals Forty Eight Thousand and 00/100 Dollars ($48,000.00). Under the lease, Debtor must pay real estate and personal property taxes; insurance; perform all maintenance; and indemnify HCCIC and Napoleon from various losses.

Debtor filed its petition under Chapter 11 of the Bankruptcy Code on September 30, 1992. Debtor continued to occupy the premises and on December 2, 1992, this Court granted Debtor an additional sixty (60) days to assume or reject the lease. On the same date, HCCIC filed its Objection to Debtor's request and a Motion for Order Compelling Debtor to Make Timely Lease Payments as Required by 11 U.S.C. § 365(d)(3). Debtor filed a Reply to HCCIC's Motion and a Motion for Approval For Assumption of Executory Contract on January 15, 1993. HCCIC filed its Memorandum in Response on February 26, 1993.

### LAW

11 U.S.C. § 1107(a) reads as follows:

**§ 1107. Rights, powers, and duties of debtor in possession.**

(a) Subject to any limitations on a trustee serving in a case under this chapter, and to such limitations or conditions as the court prescribes, a debtor in possession shall have all the rights, other than the right to compensation under section 330 of this title, and powers, and shall perform all the functions and duties, except the duties specified in sections 1106(a)(2), (3), and (4) of this title, of a trustee serving in a case under this chapter.

11 U.S.C. § 365(a) and (b)(1)(A), (b)(1)(B) and (b)(1)(C) read as follows:

**§ 365. Executory contracts and unexpired leases.**

(a) Except as provided in section 765 and 766 of this title and in subsections (b), (c), and (d) of this section, the trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor.

(b)(1) If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee—

(A) cures, or provides adequate assurance that the trustee will promptly cure, such default;

(B) compensates, or provides adequate assurance that the trustee will promptly

compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and

(C) provides adequate assurance of further performance under such contract or lease.

11 U.S.C. § 365(d)(3) reads as follows:

(3) The trustee shall timely perform all the obligations of the debtor, except those specified in section 365(b)(2), arising from and after the order for relief under any unexpired lease of a nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1) of this title. The court may extend, for cause, the time for performance of any such obligation that arises within 60 days after the date of the order of relief, but the time for performance shall not be extended beyond such 60–day period. This subsection shall not be deemed to affect the trustee's obligations under the provisions of subsection (b) or (f) of this section. Acceptance of any such performance does not constitute waiver or relinquishment of the lessor's rights under such lease or under this title.

### ISSUES

This Court will address the following issues:

I. Whether Debtor is entitled to an additional sixty (60) days to assume or reject the lease for nonresidential real property.

II. Whether the lease agreement between HCCIC and Debtor is a true lease with an option to purchase or a lease disguised as a financing arrangement.

III. Whether Debtor's Motion for Approval for Assumption of Executory Contract should be Granted.

### DISCUSSION

This case is a core proceeding under 28 U.S.C. § 157(b)(2)(M) and therefore this Court may enter a final order.

### I. SHOULD DEBTOR BE GRANTED AN EXTENSION OF SIXTY (60) DAYS WITHIN WHICH TO EITHER ASSUME OR REJECT THE LEASE AGREEMENT?

 HCCIC objected to the extension of time allotted Debtor to reject or assume the lease shortly after Debtor was granted an extension of sixty (60) days. Under 11 U.S.C. § 365(d)(3), the court may extend, for cause, the time for performance of any obligation which arises within sixty (60) days after the date of the order for relief, for a period not to exceed sixty (60) days. Debtor sought the extension for purposes of perpetuating negotiations regarding the assumption of the lease. This Court finds that Debtor's request for an extension of time was timely filed. Attempts at negotiating settlement constitute "cause" for extending the time for performance an additional sixty (60) days. Therefore HCCIC's Objection to the Extension of Time is Denied as moot.

### II. IS THE LEASE AGREEMENT A TRUE LEASE OR FINANCING ARRANGEMENT?

HCCIC argues that the agreement between these parties is indubitably a lease with an option to purchase. HCCIC further argues that under 11 U.S.C. § 365(b)(1), Debtor may not assume the lease unless monthly payments are made consistent with the lease; and a cure for the default in rent of approximately Fifty Nine Thousand and 00/100 Dollars ($59,-000.00) is made forthwith. In the alternative, HCCIC suggests that even if this Court finds that the subject agreement is not a lease, the Court should find that the agreement is an executory contract, subject to assumption or rejection under 11 U.S.C. § 365.

Debtor's counterargument states that the Lease Agreement is actually a financing statement. The economic substance of the Lease Agreement distinguishes it from a true lease in four (4) ways. One, the rental amount is not reflective of the fair market value of the property. Two, Debtor has an option to purchase the property at any time during the lease without additional consideration. Three, the graduated

increases do not reflect inflationary costs. Four, Debtor is responsible for all risks of loss, a responsibility typically borne by the owner of real property. In support, Debtor submitted an Affidavit from its President and Shareholder, Donald W. Essman, stating that the lease agreement is intended to operate as a purchase agreement.

■ The Bankruptcy Code distinguishes a lease from a security interest. A security interest is defined as a lien created by agreement. 11 U.S.C. § 101(51). A lien is defined under 11 U.S.C. § 101(37) as a charge against or interest in property to secure payment of a debt or obligation. These definitions encompass all manner of financing devices. *In re Puckett,* 60 B.R. 223 (Bankr.M.D.Tenn.1986), *aff'd mem.,* 838 F.2d 470 (6th Cir.1988) (quoting H.R.Rep. No. 595, 95th Cong., 1st Sess. 311–14 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6268, 6271; S.Rep. No. 989, 95th Cong., 2d Sess. 24–26 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5809–5812).

■ The Bankruptcy Code does not define a lease; however, the legislative history appurtenant to a security interest indicates that state or local law should be applied in determining whether a lease constitutes a security interest under the Bankruptcy Code. *In re Victoria Hardwood Lumber Company,* 95 B.R. 954 (Bkrtcy. S.D.Ohio 1988) (quoting H.R. No. 95–595, 95th Cong., 1st Sess. 314 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5787, 6271).

■ The "Lease Agreement" in the case at bar states that the parties agree that the lease shall be governed and construed under the laws for the State of Ohio. Under Ohio law, a lease is a conveyance of an estate in real property for a limited term, subject to conditions, in consideration of rent. *Jones v. Keck,* 79 Ohio App. 549, 74 N.E.2d 644 (1946). A security interest under Ohio law is an interest in personal property or fixtures that secures payment or performance of an obligation. R.C. § 1301.01(kk)(1). Whether a lease is intended as security is to be determined by the facts of each case. In making this

determination, the court must analyze the intent of the parties at the inception of the transaction. *Victoria Hardwood, supra,* (quoting *Puckett, supra* ).

■ Often, the intent of the parties is so convoluted that the court must infer or presume intent from the parties' course of dealings. Intent can generally be gleaned from the lessee's rights upon termination of the lease; the factual circumstances surrounding the transaction; documentary evidence; or the parties' subsequent treatment of the relationship. *Victoria Hardwood, supra.* In determining intent, the court in *Victoria Hardwood, supra,* also considered: (1) the apportionment of rent; (2) the application of rental income toward purchase price; (3) lessee's rights at the end of the lease term; (4) the apportionment of repair costs and payment of utility and taxes; (5) indemnification by the lessee; (6) the nonexistence of a financing statement; (7) the characterization of the document; (8) the useful life of the premises; and (9) the option, if any, to purchase.

■ Since there is no testimony from the instant case regarding the factual circumstances surrounding the transaction's inception or evidence of the parties' subsequent treatment of the relationship, this Court's analysis centers upon the documentary evidence, namely the "Lease Agreement" and Debtor's rights upon termination of the lease. Relying upon the factors set forth in *Victoria Hardwood, supra,* this Court finds at least eleven (11) facts visible on the face of the subject "Lease Agreement" which aptly show that these parties intended to create a lease. One, the document is captioned "Lease Agreement" and the parties to the agreement are designated as "landlord" and "tenant." Two, Debtor's interest in the lease is specifically referred to as a "leasehold interest." Three, the agreement contains lease-like covenants relative to use and enjoyment of the premises; and subletting and assignment of the leasehold. Four, monthly payments for use and occupancy are denominated as "rent", subject to penalty for untimely payment. Five, Debtor's monthly rent does not accrue eq-

uity in the leased premises. Six, title to the premises remains with HCCIC unless Debtor invokes its option to purchase. Seven, Debtor may offset monthly rental payments against the purchase price of the leased premises only upon exercising its option to purchase. Eight, Debtor is under no compulsion to exercise its option to purchase. Nine, if Debtor fails to exercise the option to purchase, the real property must be returned to HCCIC. Ten, the allocation of risks to the Debtor has no affect upon HCCIC's full control of the leased premises. Eleven, the useful life of the real estate is significantly longer than the life of the leasehold.

Although Debtor's President and Shareholder averred that the agreement was intended to be a financing arrangement, the evidence is overwhelmingly contrary to his sworn statement. This Court finds in the instant case that the agreement complies with the legal definition of a lease under the laws for the State of Ohio. Moreover, the Court further finds that the intent of these parties when they entered into the agreement was to create a lease. Consequently, this Court finds that the "Lease Agreement" between HCCIC and Debtor is a true lease and not a financing arrangement.

### III. SHOULD DEBTOR'S MOTION FOR APPROVAL FOR ASSUMPTION OF EXECUTORY CONTRACT BE GRANTED OR DENIED?

On December 2, 1992, this Court granted Debtor a sixty (60) day extension within which to assume or reject the lease and executory contract. On January 15, 1993, Debtor filed a Motion for Approval For Assumption of Executory Contract. Included within the Motion is Debtor's alternate argument that if the Court finds the agreement to be a true lease, then Debtor wishes to assume the lease. In addition, Debtor tendered rent in the amount of Four Thousand and 00/100 Dollars ($4,000.00); offered to pay rent consistent with the lease agreement; and offered to pay arrearages, subject to the interest, by making payments through the Order of Confirmation.

HCCIC argues that under Section 365(b)(1), Debtor's offer is unacceptable since Debtor has not proposed a mechanism for the forthwith cure of a default in rent totalling approximately Fifty Nine Thousand and 00/100 Dollars ($59,000.00). HCCIC further argues that Debtor has not shown its ability for continued compliance with the terms of the lease agreement.

Under § 1107(a), a debtor in possession has the power to assume an unexpired lease if the following conditions of § 365 are satisfied. First, there must be a default in the unexpired lease. Second, Debtor must cure or provide adequate assurance that the Debtor will promptly cure the default in rent. Third, Debtor must compensate or provide adequate assurance that Debtor will compensate any third party for actual pecuniary loss to that party resulting from Debtor's default. Fourth, Debtor must provide adequate assurance of future performance consistent with the lease.

The Bankruptcy Code fails to provide explicit guidelines regarding the import of "promptly cure" or "adequate assurances" under 11 U.S.C. § 365. "Curing" requires payment of all rental arrearages and other money obligations at the time the lease is assumed. 2 William L. Norton, Jr., NORTON BANKRUPTCY LAW AND PRACTICE § 23.11.55 (1992). The bankruptcy court in *In re Rose*, 7 B.R. 911 (B.C.S.D.Tex.1981) suggests that when the debtor is unable to make a prompt cure, "adequate assurance" requires that the debtor make a firm commitment to make all payments or at least demonstrate a reasonable capability to do so. The nature of the cure is generally contingent upon the circumstances of the parties and the nature of the default. *Berkshire Chemical Haulers, Inc.* 20 B.R. 454 (Mass.Dist.Ct.1982).

Debtor, in the case at bar, concedes that there has been a default in the unexpired lease. To cure its default, Debtor proposes periodic payments, subject to appropriate interest rates, made through Order of Confirmation. When reviewing Debtor's proposal in conjunction with the

**332**

requirements of § 365(b)(1)(A), the Court finds Debtor's proposal untenable. Debtor's 1989 gross sales totalled One Million One Hundred Fifty Five Thousand Five Hundred Sixty Nine and 00/100 Dollars ($1,155,569.00) while gross sales in 1992 were Eight Hundred Seventy One Thousand Two Hundred Seventeen and 00/100 Dollars ($871,217.00). Debtor's Sales have continuously and significantly decreased since 1989. Debtor's monthly reports commencing in October, 1992 through January 30, 1993 continuously show that disbursements collectively exceed receipts. Finally, in the February 1, 1993 monthly report, receipts exceeded disbursements by One Thousand Six Hundred Sixty and 05/100 Dollars ($1,660.05). Based upon Debtor's schedules and reports, there are simply no additional monies available to Debtor to cure the arrearage. Debtor is neither in a position to cure promptly nor make adequate assurances that it can promptly cure the default.

Under 11 U.S.C. § 365(b)(1)(B), neither HCCIC nor any third party has come forward with evidence that there are compensatory losses emanating from the default. Therefore this Court does not consider that factor in its analysis.

■ Finally, the Court must consider whether Debtor can assure further performance under the lease as required under 11 U.S.C. § 365(b)(1)(C). The Debtor's financial statements reveal that from October 1, 1992 through February 15, 1993, collective disbursements exceed receipts. Debtor's Monthly Income and Expense schedule filed November 9, 1992 reflects that Debtor's monthly expenses, minus depreciation, total Eighty Seven Thousand Two Hundred Twenty Seven and 00/100 Dollars ($87,-227.00). The monthly expenses extrapolated over an annual basis exceed Debtor's gross sales for 1992. HCCIC claims that Debtor has a rent arrearage of approximately Fifty Nine Thousand and 00/100 Dollars ($59,000.00). Debtor does not refute the amount of this claim. To create an arrearage of this magnitude, Debtor has apparently been operating at HCCIC's expense for some time. Yet Debtor asks HCCIC to now rely upon its assurances that it can perform under the Lease Agreement.

This Court finds that Debtor has failed to satisfy the requirements of 11 U.S.C. § 365(b)(1)(A), and (b)(1)(C). Given Debtor's present circumstances, Debtor cannot assure payment of arrearages or future payment of rent. Debtor cannot be permitted to assume the lease and therefore its Motion For Approval For Assumption of Executory Contract should be Denied. Accordingly, HCCIC's Motion to Compel Debtor to Make Timely Lease Payments is moot.

In reaching the conclusion found herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this opinion.

Accordingly, it is

**ORDERED** that HCCIC's Motion Objecting to Extend Time be, and hereby is, **DISMISSED** as Moot.

It is **FURTHER ORDERED** that HCCIC's Motion Compelling Debtor to Make Timely Lease Payments be, and hereby is, **DISMISSED** as Moot.

It is **FURTHER ORDERED** that Debtor's Motion for Approval for Assumption of Executory Contract be, and hereby is **DENIED.**