OPINION
{¶ 1} Plaintiff-appellant, Tedi Hubbard, appeals the decision of the Butler County Court of Common Pleas granting summary judgment in favor of defendants-appellees, David Dillingham, Dean Dillingham, Timothy Stieg, and D.A.T.A.S. Partnership ("DATAS"). We affirm the decision of the trial court.
 {¶ 2} In May 1989, appellant entered into a contract with DATAS to lease property owned by DATAS. The contract was entitled, "Lease with Option to Purchase." The term of the lease was three years and included an option to renew for an additional year. The lease also included an option to purchase during the three-year term or during the one-year renewal period, if applicable.
 {¶ 3} In the years following the execution of the lease, appellant operated a jewelry store on the property. No subsequent lease was ever executed. In May 1993, appellant's husband, Gary Hubbard, issued a $10,000 check to DATAS. Appellant claimed the following regarding the check in an affidavit submitted to the trial court: "It was [appellant's] understanding * * * that the $10,000 payment was to allow her to remain on the premises for as long as she wished to remain there and that the terms of the original contract between the parties would continue to be in full effect, including the purchase of the property[.]"
 {¶ 4} Appellant continued to operate her jewelry store on the premises for the next eight years, paying monthly rent in accordance with the May 1989 agreement. In January 2001, DATAS hung a "for sale" sign in front of the property. According to appellant, she had no prior knowledge that the "for sale" sign would be placed there. In March 2001, appellant filed a complaint in the trial court naming DATAS and its partners as defendants. The complaint alleged that the placement of the "for sale" sign on the property caused appellant to lose business sales, an experienced employee, and rental income from a sublessee. The complaint also alleged that appellant lost the benefit of $85,000 in improvements.
 {¶ 5} In June 2001, DATAS and its partners moved for summary judgment. The trial court granted the motion in January 2002. The trial court ruled that the agreement between DATAS and appellant was a lease with an option to purchase, not a land contract as appellant had argued. The trial court determined that appellant had not exercised her option to purchase the property under the agreement and was not entitled to damages as a matter of law.
 {¶ 6} Appellant now appeals the trial court's decision, assigning one error.
Assignment of Error No. 1
 {¶ 7} "The trial court erred in granting defendants'-appellees' motion for summary judgment."
 {¶ 8} Central to appellant's argument on appeal is that the May 1989 agreement with DATAS was a land contract, not a lease with an option to purchase, as the trial court found. Therefore, appellant contends, the May 1989 agreement gave her an ownership interest in the property, preventing DATAS from recovering possession of the property except via a foreclosure proceeding. In addition to a breach of contract claim based on the alleged land contract, appellant also argues that she has valid claims for unjust enrichment/quasi-contract, tortious interference with a contract, and equitable estoppel that should not have been dismissed on summary judgment.
 {¶ 9} Summary judgment should be granted only when the moving party demonstrates that (1) there is no genuine issue of material fact remaining to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence presented that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.Harless v. Willis Day Warehousing Co. (1978), 54 Ohio St.2d 64, 66.
 {¶ 10} Appellant argues that the lease agreement, despite its label as a "Lease with Option to Purchase," is actually a land contract. Appellant points to various provisions of the lease including the provision stating that she was to make rental payments directly to the bank that loaned DATAS the funds to purchase the property. Additionally, these rental payments were to be credited toward the sale price of the property if appellant opted to purchase. Appellant also notes that she made a $32,000 payment at the commencement of the lease, which she describes as a "down payment."
 {¶ 11} Appellant cites several federal bankruptcy court cases that analyze whether a written agreement is a lease or a land contract. In making this determination, these courts analyzed the intent of the parties as evidenced in the written agreement. See, e.g., In re D.W.E.Screws Products, Inc. (Bkrtcy.S.D.Ohio1993), 157 B.R. 326, citing In reVictoria Hardwood Lumber Co., Inc. (Bkrtcy.S.D.Ohio1988), 95 B.R. 954. In determining intent, these courts considered factors such as the characterization of the document, the lessee's rights at the end of the lease term, the application of rent to the purchase price, the useful life of the premises, and whether an option to purchase existed. See id.
 {¶ 12} R.C. 5313.01 defines a "land installment contract" as follows:
 {¶ 13} "an executory agreement which by its terms is not required to be fully performed by one or more of the parties to the agreement within one year of the date of the agreement and under which the vendor agrees to convey title in real property located in this state to the vendee and the vendee agrees to pay the purchase price in installment payments, while the vendor retains title to the property as security for the vendee's obligation. Option contracts for the purchase of real property are not land installment contracts."
 {¶ 14} Based on the definition of a land contract in R.C. 5313.01
and the intent of the parties as evidenced in the terms of the May 1989 agreement, we find that the agreement was a lease with an option to purchase rather than a land contract. First, the agreement was captioned, "Lease with Option to Purchase." Additionally, the lease did not contain any language suggesting that appellant would gain ownership of the property upon the end of the lease. DATAS did not agree to "convey title" in the property nor did appellant expressly agree to pay the entire purchase price in installment payments. Rather, appellant had the option to purchase the property under the terms of the agreement, and was not compelled in any way to purchase the property.
 {¶ 15} As further evidence that the May 1989 agreement was a lease, the agreement contains lease-like covenants relative to use and enjoyment of the premises, and subletting and assignment of the leasehold. While appellant is correct in noting that her rental payments were credited to the sale price, this credit was only to have effect if appellant opted to purchase the property, which she did not. For the above reasons, we find that the May 1989 agreement was, as it purported to be, a lease.
 {¶ 16} Having concluded that the May 1989 agreement was a lease, we now analyze it as such. Ohio courts recognize the inherent contractual nature of lease agreements. See Bevy's Dry Cleaners Shirt Laundry,Inc. v. Streble (1965), 2 Ohio St.2d 250; Downtown Associates, Ltd. v.Burrows Bros. Co. (1986), 34 Ohio App.3d 296, 297. In identifying and interpreting the terms of a lease, courts shall apply traditional contract law principles. The court, in construing the provisions of any contract, has the task of determining the intent of the parties at the time the contract was made. Stony's Trucking Co. v. Public UtilitiesCommission (1972), 32 Ohio St.2d 139, 142. The actual intent of the parties is presumed to reside in the language of the contract itself. SeeKelly v. Medical Life Ins. Co. (1987), 31 Ohio St.3d 130, 132.
 {¶ 17} The language of the lease states that appellant had the option to purchase the property during the three-year term or the one-year renewal period, if applicable. Appellant did not offer any evidence that she exercised this option during the three-year term or the one-year renewal period. Appellant simply became a month-to-month tenant at the expiration of the lease. Accordingly, appellant does not have a valid breach of contract claim based on the May 1989 agreement as a matter of law because she has not shown that DATAS breached the May 1989 lease agreement.
 {¶ 18} Appellant also argues that she has a breach of contract claim based on an alleged oral agreement between her and DATAS made in May 1993. Appellant contends that this agreement gave her an indefinite option to purchase the property and is evidenced by the $10,000 check paid by her husband to DATAS. DATAS argues that this alleged oral promise is within the statute of frauds and unenforceable.
 {¶ 19} Ohio's statute of frauds, codified at R.C. 1335.05, provides that "[n]o action shall be brought * * * upon a contract or sale of lands, tenements, or hereditaments, or interest in or concerning them * * * unless the agreement upon which such action is brought, or some memorandum or note thereof, is in writing and signed by the party to be charged therewith or some other person thereunto by him or her lawfully authorized."
 {¶ 20} In North Coast Cookies, Inc. v. Sweet Temptations, Inc.
(1984), 16 Ohio App.3d 342, the court of appeals set forth the purpose of the statute of frauds as follows: "This statute serves to ensure that transactions involving a transfer of realty interests are commemorated with sufficient solemnity. A signed writing provides greater assurance that the parties and the public can reliably know when such a transaction occurs. It supports the public policy favoring clarity in determining real estate interests and discourages indefinite or fraudulent claims about such interests." Id. at 348. If a contract falling under the statute of frauds is not properly memorialized in a signed writing, the effect of the statute is to render an otherwise valid contract unenforceable. Beavercreek Associates v. Larry Stein Realty Co. (Aug. 30, 1995), Montgomery App. No. 14950.
 {¶ 21} We find that the alleged oral agreement falls squarely within the statute of frauds and is unenforceable. Appellant's alleged option to purchase the property was not memorialized in writing and signed by DATAS in accordance with R.C. 1335.05. See Michel v. Bush,146 Ohio App.3d 208, 213, 2001-Ohio-1371.
 {¶ 22} Nevertheless, appellant argues that she has met the part performance exception to the statute of frauds defense. Under this exception, the party that is relying on the agreement must have undertaken "unequivocal acts * * * which are exclusively referable to the agreement and which have changed his position to his detriment and make it impossible or impractical to place the parties in statu quo." Delfinov. Paul Davies Chevrolet, Inc. (1965), 2 Ohio St.2d 282, 287.
 {¶ 23} We do not find that appellant has presented sufficient evidence of "unequivocal acts" that were exclusively referable to the alleged oral agreement. We do not find that appellant's actions following the $10,000 payment in May 1993 are evidence of part performance, but merely evidence of the month-to-month tenancy that existed following the expiration of the lease. Accordingly, appellant's breach of contract claim based on the alleged oral agreement in May 1993 fails as a matter of law.
 {¶ 24} Appellant also asserts additional claims that, she argues, should have prevented the trial court from granting summary judgment. These claims include a quasi-contract/unjust enrichment claim, a tortious interference with a contract claim, and an equitable estoppel claim.
 {¶ 25} We first address appellant's quasi-contract/unjust enrichment claim. In order to succeed on a claim of unjust enrichment, or quasi-contract, a plaintiff must prove the following elements: (1) a benefit conferred by a plaintiff upon a defendant; (2) knowledge by the defendant of the benefit; and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment. Hambleton v. R.G. Barry Corp. (1984), 12 Ohio St.3d 179, 183.
 {¶ 26} In this case, appellant claims that DATAS has unjustly retained the benefit of $85,000 worth of improvements made by appellant. We do not think that these improvements were a benefit conferred by appellant upon DATAS. It does not appear from the record that appellant made these improvements for DATAS's benefit, but rather made them for her own benefit and the benefit of her business. Even if these improvements could be considered a benefit conferred upon DATAS by appellant, we do not think that DATAS's retention of these improvements is unjust under the circumstances. Clause four of the lease states in part: "All alterations, additions, and improvements on or in the demised premises at the commencement of the term and that may be erected or installed during the term, shall become part of the demised premises and the sole property of [DATAS]." Given this language in the lease, DATAS was entitled to the benefit of improvements made by appellant. Accordingly, appellant's quasi-contract/unjust enrichment claim fails as a matter of law.
 {¶ 27} We next address appellant's claim for tortious interference with a contract. The elements of tortious interference with a contract are as follows: (1) the existence of a contract; (2) the wrongdoer's knowledge of the contract; (3) the wrongdoer's intentional procurement of the contract's breach; (4) lack of justification; and (5) resulting damages. Fred Siegel Co. v. Arter Hadden, 85 Ohio St.3d 171,1999-Ohio-260, paragraph one of the syllabus.
 {¶ 28} Appellant's tortious interference with a contract claim fails as a matter of law because we find no evidence in the record of DATAS's intentional procurement of the contract's breach. As we have discussed above, there was no breach of the lease contract. Appellant simply did not exercise her option to purchase the property during the three-year term of the lease or the one-year renewal period.
 {¶ 29} We now address appellant's claim of equitable estoppel. To succeed on a claim of equitable estoppel, a plaintiff must prove the following elements: (1) the defendant made a factual misrepresentation, (2) that was misleading, (3) that induced actual reliance that was reasonable and in good faith, and (4) that caused detriment to the relying party. Heskett v. Paulig (1999), 131 Ohio App.3d 221, 226-27.
 {¶ 30} Appellant's equitable estoppel argument focuses on her husband's $10,000 payment to DATAS in May 1993. In her affidavit, she claims that it was her understanding, based on statements made by Timothy Stieg, that this payment would allow her to remain on the premises for as long as she wanted and extended to her an indefinite option to purchase the property.
 {¶ 31} Appellant does not allege that Stieg made a misleading factual misrepresentation, which is essential to her equitable estoppel claim. She only discusses her interpretation of Stieg's statements. Even if there is a genuine issue of fact as to whether Stieg made a misleading factual representation, we find as a matter of law that any reliance on such a factual representation was unreasonable under the circumstances. Appellant stated in her affidavit that it was her understanding that the terms of the May 1989 agreement "would continue to be in full effect" after the $10,000 payment was made in May 1993. Thus, the contract still controlled the relationship between the parties. Under the contract, she could only purchase the property until, at the latest, the end of the one-year renewal period. We find that any reliance by appellant upon alleged oral statements made by Stieg in May 1993 in order to exercise an option to purchase as late as January 2001 was unreasonable. Accordingly, appellant's claim for equitable estoppel fails as a matter of law.
 {¶ 32} Appellant also contests the trial court's decision to grant the summary judgment motion of defendant, Timothy Stieg. In his motion for summary judgment, Stieg claimed that he was not a partner in the DATAS partnership after August 1991 and could not be liable for any actions of the partnership beyond that date. Regardless of whether Stieg was a partner of the DATAS partnership, the trial court's granting of Stieg's summary judgment motion was proper. Even if Stieg were a partner, he would not be liable because we have found that appellant's contractual and non-contractual claims against the partnership and its partners fail as a matter of law.
 {¶ 33} Based on the foregoing discussion, we overrule appellant's assignment of error and affirm the decision of the trial court. After reviewing the trial court's decision de novo, we find that appellant's contractual and non-contractual claims with respect to each defendant fail as a matter of law.
Judgment affirmed.
WALSH, P.J., and YOUNG, J., concur.